IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32188-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH WILLIAM HART, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Joseph Hart appeals his convictions for second degree murder and second degree assault after a stipulated facts trial. He contends (1) his conviction for second degree assault violates double jeopardy, (2) his mandatory sentence of life without the possibility of release under the Persistent Offender Accountability Act (POAA) is cruel and unusual punishment, and (3) the trial court erred in imposing discretionary legal financial obligations (LFOs) without first determining his ability to pay and his mental status. In his statement of additional grounds for review (SAG), Mr. Hart expresses unpersuasive concerns about his competency. Because we hold double jeopardy principles are violated, we vacate Mr. Hart's second degree assault conviction and remand for resentencing. We affirm his POAA life sentence. On remand, the trial

court can address Mr. Hart's LFO concerns and correct a conceded scrivener's error not discussed here.

## FACTS

In March 2012, Mr. Hart, a paranoid schizophrenic who suffers from antisocial personality disorder and substance abuse, lived in a trailer operated by Lourdes Health Network for its patients in Pasco, along with Rodger Lincoln and one other roommate. On March 6, Mr. Hart killed Mr. Lincoln by stabbing Mr. Lincoln over 30 times with a knife. Mr. Hart left the knife buried in Mr. Lincoln's eye socket. Eastern State Hospital doctors determined Mr. Hart knew what he was doing at the time of the murder and was competent to stand trial. After a stipulated facts trial, the court convicted Mr. Hart of second degree murder and second degree assault. Because Mr. Hart had two prior "most serious offense" convictions including one for attempted first degree robbery at age 20 and one for second degree assault at age 22, the trial court sentenced him under the POAA to life without the possibility of release and imposed $31,354.27 in mandatory and discretionary LFOs. Mr. Hart appealed.

## ANALYSIS

### A. Double Jeopardy

The issue is whether Mr. Hart's double jeopardy rights were violated when he was convicted of second degree murder and second degree assault. Mr. Hart contends (1) the two convictions are the same in law and fact and (2) there was no break in his

conduct to justify multiple convictions. Although not raised below, these contentions raise constitutional concerns that may be raised for the first time on appeal.

Article I, section 9 of the Washington State Constitution "provides the same protection against double jeopardy as the fifth amendment to the federal constitution." *In re Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). Both the state and federal double jeopardy clauses protect against multiple punishments for the same offense. *Id.* When a defendant's act supports charges under two criminal statutes, the court must determine whether, in light of legislative intent, the charged crimes constitute the same offense. *Id.* If the statutes do not expressly disclose legislative intent, the court must apply the "same evidence" or *Blockburger*[1] test. *Id.* at 816. These two tests require the court to determine whether each statute requires proof of a fact which the other does not. *Id.* at 816-17. In so determining, the court must not merely compare the statutory elements of each crime at their most abstract level; rather, the court must actually ascertain whether each statute requires proof of additional facts. *Id.* at 818.

If there is an independent purpose or effect to each crime, then the crimes may be punished as separate offenses. *State v. Freeman*, 153 Wn.2d 765, 773, 108 P.3d 753 (2005) (stating separate convictions for assault and robbery did not violate double jeopardy where "the defendant struck a victim after completing a robbery, [because] there was a separate injury and intent justifying a separate assault conviction, especially since the assault did not forward the robbery"); *see also State v. Noltie*, 116 Wn.2d 831,

---

[1] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

848, 809 P.2d 190 (1991) ("If one crime is over before another charged crime is committed, and different evidence is used to prove the second crime, then the two crimes are not the 'same offense' and a perpetrator may be punished separately for each crime without violating a defendant's double jeopardy rights.").

RCW 9A.32.050(1)(a) provides a person is guilty of second degree murder when, "[w]ith intent to cause the death of another person but without premeditation, he . . . causes the death of such person." RCW 9A.36.021(1)(c) provides a person is guilty of second degree assault when he "[a]ssaults another with a deadly weapon." Given the statutes, our focus is whether the evidence required to support Mr. Hart's second degree murder conviction is sufficient to support his second degree assault conviction.

In *State v. Read*, 100 Wn. App. 776, 789-93, 998 P.2d 897 (2000), this court found the defendant's convictions for second degree murder and first degree assault violated double jeopardy. The defendant was charged with both crimes after shooting another person. *Id.* at 778. The court found the defendant's "murder and assault convictions are the same in fact, because they are based on the same act, directed at the same victim." *Id.* at 791. Using the "same evidence" test, the court found the two convictions were the same in law because "proof of second degree intentional murder necessarily also proves first degree assault." *Id.* at 792. Because the murder and assault statutes are aimed at assaultive conduct where the "essential difference between them is the grievousness of the harm caused by the conduct," the legislature did not intend for a defendant to be convicted of both crimes. *Id.*; *see also Orange*, 152

4

Wn.2d at 304 (holding first degree attempted murder and first degree assault were the same in fact and in law where "[t]he two crimes were based on the same shot directed at the same victim, and the evidence required to support the conviction for first degree attempted murder was sufficient to convict [defendant] of first degree assault").

Mr. Hart's convictions for second degree murder and second degree assault are the same in law. Proof of second degree assault does not necessarily prove second degree murder, as a person can assault another person without actually causing death. But second degree murder requires proof of intent to cause death and actual death. A person who intends to cause death also intends to assault a person. By showing Mr. Hart intentionally caused Mr. Lincoln's death with a knife, the State necessarily proved Mr. Hart also intentionally assaulted Mr. Lincoln with the knife, a deadly weapon.

The convictions are also the same in fact. The convictions were based on the same continuing knife attack against the same victim within a very short time period. Mr. Hart's final act of stabbing Mr. Lincoln in the eye was part of his course of conduct, even if Mr. Lincoln was still alive when last stabbed in the eye. The cause of death was sharp force injury to the head and torso. No separate purpose appears in this record. *See Freeman*, 153 Wn.2d at 779 (stating a defendant's unnecessary force must have an independent purpose, not just be more violent than was necessary to accomplish the crime, in order for there to be no double jeopardy violation). Because the two crimes are the same in law and in fact, Mr. Hart's convictions for second degree murder and second degree assault violate double jeopardy. We vacate the second degree assault

5

conviction and remand for resentencing. *See State v. Valentine*, 108 Wn. App. 24, 29, 29 P.3d 42 (2001) (the appropriate remedy for double jeopardy violations is to vacate the lesser conviction). No issue remains regarding evidence sufficiency for Mr. Hart's murder conviction. The murder conviction alone supported his POAA sentencing.

### B. Cruel and Unusual Punishment

The issue is whether Mr. Hart's mandatory sentence under the POAA of life without the possibility of release constitutes cruel and unusual punishment. He contends the POAA's failure to provide for individualized sentencing determinations in cases where the offenders are "youthful" and/or mentally ill is unconstitutional.

Whenever a sentencing court concludes an offender is a "persistent offender," the court must impose a life sentence, and the offender is not eligible for any form of early release. RCW 9.94A.570. A "persistent offender" is someone currently being sentenced for a "most serious offense" who also has two or more prior convictions for "most serious offenses." RCW 9.94A.030(37). RCW 9.94A.030(32) lists Washington's "most serious offenses," which includes any class A felony, second degree assault, and second degree robbery, among others.

Under the POAA, Mr. Hart's second degree murder conviction is a strike offense. *See* RCW 9A.32.050; RCW 9.94A.030(32)(a). Because of Mr. Hart's earlier convictions for attempted first degree robbery and second degree assault, the second degree murder conviction became his third strike. The sentencing court was required to sentence Mr. Hart to life without the possibility of release.

6

"The Eighth Amendment to the United States Constitution bars cruel and unusual punishment while article I, section 14 [of the Washington State Constitution] bars cruel punishment." *State v. Witherspoon*, 180 Wn.2d 875, 887, 329 P.3d 888 (2014). Washington's constitutional provision is more protective than the Eighth Amendment's in this context. *Id.* Thus, if Mr. Hart's life sentence does not violate the more protective state provision, no need exists to further analyze the sentence under the Eighth Amendment to the United State Constitution. *Id.*

To determine whether punishment is cruel under article I, section 14, we consider the four factors delineated in *State v. Fain*, 94 Wn.2d 387, 392-93, 617 P.2d 720 (1980). Thus, we consider: "(1) the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment the defendant would have received in other jurisdictions, and (4) the punishment meted out for other offenses in the same jurisdiction." *Witherspoon*, 180 Wn.2d at 887 (quoting *State v. Rivers*, 129 Wn.2d 697, 712, 921 P.2d 495 (1996)).

The Washington Supreme Court recently upheld the imposition of a mandatory life sentence without the possibility of release under the POAA in *Witherspoon*. There, the defendant was sentenced to life without the possibility of release for committing second degree robbery. *Id.* at 882. In analyzing the *Fain* factors, the Supreme Court noted the nature of the crime of robbery includes the threat of violence against another person. *Id.* at 888. The purpose of the POAA is the segregation of persistent offenders from the rest of society, generally deterring others. *Id.* In Washington, most robbery

7

offenses carry a sentence of life without the possibility of release when the offender has a history of at least two other similarly serious offenses, even if most other jurisdictions do not count second degree robbery as a strike offense. *Id.*

When analyzing Mr. Hart's sentence under the *Fain* factors, his sentence of life without the possibility of release for his third strike offense is proportionate to the crime. First, similar to second degree robbery, the nature of second degree murder involves more than the threat of violence because of the intentional taking of a human life. Second, the legislative purpose of the POAA is the same as enunciated in *Witherspoon*. Third, other jurisdictions with three strikes laws include second degree murder as a strike offense. *See* Fla. Stat. Ann. § 775.084; N.C. Gen. Stat. Ann. §§ 14-7.7, 14-7.12; S.C. Code Ann. § 17-25-45; Va. Code Ann. § 19.2-297.1; W. Va. Code § 61-11-18. Fourth, in Washington, "most serious offenses," including second degree murder, carry with them POAA life sentence consequences when the offender has at least two other similarly serious convictions. Considering the *Fain* factors in a traditional analysis, we conclude Mr. Hart's sentence of life without the possibility of release does not violate article I, section 14 to the Washington State Constitution and no further analysis of the Eighth Amendment is required. *See Witherspoon*, 180 Wn.2d at 890.

Mr. Hart argues we should extend the principles underlying United States Supreme Court cases regarding the Eighth Amendment prohibitions against mandatory life sentences for juveniles to all "youthful" offenders. In support, he discusses *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), *Graham v. Florida*,

8

560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). We decline to do so.

*Miller*, *Graham*, and *Roper* involve juveniles. In *Miller*, the Court noted children are constitutionally different from adults for sentencing purposes. *Miller*, 132 S. Ct. at 2464. The Court stated three primary differences between children and adults: "(1) children lack maturity and have an underdeveloped sense of responsibility that can lead to impulsivity and risk taking; (2) children are vulnerable to negative influences and have little control over their environments; and (3) children's characters are not well formed, meaning that their actions are less likely than adults to be evidence of depravity." *Witherspoon*, 180 Wn.2d at 890 (citing *Miller*, 132 S. Ct. at 2464). The *Miller* Court held the Eighth Amendment prohibits a sentencing scheme mandating life sentences without the possibility of release for juveniles. *Miller*, 132 S. Ct. at 2469; *see also Graham*, 560 U.S. at 82 (holding the Eighth Amendment prohibits the imposition of life sentences without the possibility of release for juvenile offenders who did not commit homicide); *Roper*, 543 U.S. at 578 (holding the Eighth Amendment forbids sentencing an offender who was under the age of 18 at the time of committing the offense to death).

While Mr. Hart may have been "youthful" when he committed attempted first degree robbery at age 20 and second degree assault at age 22, he was not a juvenile. As noted by the Washington Supreme Court, "*Graham* and *Miller* unmistakably rest on the differences between children and adults and the attendant propriety of sentencing children to life in prison without the possibility of release." *Witherspoon*, 180 Wn.2d at

9

890. Mr. Hart was age twenty-seven, nine years after becoming an adult, when he murdered Mr. Lincoln. Thus, he was an adult when committing all three of his strike offenses.

Mr. Hart argues we should consider and apply the emerging neuroscience discussed in *Miller* to "youthful" offenders aged 18 to 25. But he cites to no legal authority where a court has found a 20- or 22-year-old offender to be a juvenile. While "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," the *Roper* Court understood it had to draw a line somewhere. *Roper*, 543 U.S. at 574 (stating the age of 18 is the line for which death eligibility should rest because it is the point where society draws the line for many purposes between childhood and adulthood). Moreover, the cases cited by Mr. Hart from other jurisdictions all involve offenders who were under the age of 18 when they committed the crimes. *See, e.g., People v. Gutierrez*, 58 Cal. 4th 1354, 1360-61, 171 Cal. Rptr. 3d 421 (2014); *State v. Lyle*, 854 N.W. 2d 378, 380 (Iowa 2014); *State v. Long*, 138 Ohio St. 3d 478, 2014-Ohio-849, 8 N.E. 3d 890, at ¶¶ 1-2; *Bear Cloud v. State*, 2013 WY 18, ¶¶ 1-2, 4, 294 P.3d 36, 39 (Wyo. 2013).

Next, Mr. Hart argues we should find his sentence cruel because he suffers from a mental illness, paranoid schizophrenia. He asserts *Miller* requires a sentencing court to take a youthful offender's "background and emotional development" into account when sentencing. *Miller*, 132 S. Ct. at 2467. Typically, when sentencing an adult defendant, a court can impose an exceptional sentence below the standard range if it

finds a "defendant's capacity to appreciate the wrongfulness of his . . . conduct . . . was significantly impaired." RCW 9.94A.535(1)(e). The record must show both the existence of the mental condition and the connection between the condition and significant impairment of the defendant's ability to appreciate the wrongfulness of his conduct. *State v. Rogers*, 112 Wn.2d 180, 185, 770 P.2d 180 (1989).

But no need exists for an individualized sentencing determination for Mr. Hart. He described his murderous actions and knew what he was doing. His counselor stopped by the trailer the previous day and did not see Mr. Hart exhibiting signs of paranoia; the arresting officers did not see Mr. Hart exhibit psychotic symptoms. Mr. Hart was compliant with his prescribed course of treatment. Mr. Hart admitted if he had stopped to think about the consequences of his actions, he would not have stabbed Mr. Lincoln. The evidence insufficiently links Mr. Hart's schizophrenia to a significant impairment of his ability to appreciate the wrongfulness of his actions.

Lastly, Mr. Hart argues his life sentence is unconstitutionally cruel because he will not receive meaningful mental health treatment while in prison. No evidence shows the mental health treatment available to Mr. Hart in prison will be inadequate, especially in light of RCW 72.68.031, which allows the Department of Corrections to transfer a mentally ill prisoner to a mental health facility for treatment. Because no facts are present to evaluate Mr. Hart's argument on this point, his argument is premature.

11

## C. LFOs

Mr. Hart contends the trial court erred in imposing over $25,000 in discretionary LFOs in his sentence. He argues for the first time here: (1) the evidence did not show he has or likely will have the ability to pay, (2) imposing court-appointed counsel and expert witness fees as costs infringes on his right to a constitutionally guaranteed trial, and (3) the court should have considered his mental health situation under RCW 9.94A.777(1) when deciding his ability to pay LFOs.[2]

RCW 10.01.160(3) states a sentencing court "shall not order a defendant to pay costs unless the defendant is or will be able to pay them." When determining the amount and method for paying the costs, "the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." RCW 10.01.160(3). The Washington Supreme Court held RCW 10.01.160(3) requires a court "do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry"; rather, the record must show the court "made an individualized inquiry into the defendant's current and future ability to pay." *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). This inquiry necessarily requires the trial court to consider factors such as incarceration, here without possibility of release, and a defendant's debts. *Id.* The trial court did not do this, but considering

---

[2] Mr. Hart moved to strike a footnote in the State's supplemental response. As the footnote is not in the record, it is stricken and not considered in this analysis. *See State v. Leach*, 113 Wn.2d 679, 693, 782 P.2d 552 (1989); RAP 10.3(a)(6), (b).

our remand for resentencing, Mr. Hart may raise his LFO arguments and objections at his resentencing.

## D. SAG

Nothing in the record supports Mr. Hart's SAG concerns. He does not explain in what way he was fooled by his attorney or how his medications interfered with his trial. Thus, we do not consider the matter on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The appropriate means of raising matters outside our record is through the filing of a personal restraint petition. *Id.*

Affirmed. Remanded for proceedings consistent with this opinion.

Brown, A.C.J.
_____
Brown, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey