******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NORMAN HAUGHEY *v.* COMMISSIONER
OF CORRECTION
(AC 38214)

DiPentima, C. J., and Beach and Westbrook, Js.

*Argued March 9—officially released June 6, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Erica A. Barber*, assigned counsel, for the appellant (petitioner).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, former state's attorney, and *Rebecca A. Barry*, assistant state's attorney, for the appellee (respondent).

*Opinion*

WESTBROOK, J. Following the habeas court's denial of his amended petition for a writ of habeas corpus, the petitioner, Norman Haughey, appeals from the habeas court's denial of his petition for certification to appeal. On appeal, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because his mandatory sentence of life imprisonment without the possibility of release violated the requirement of individualized, proportionate sentencing under the eighth amendment to the United States constitution as articulated in *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).[1] The petitioner also claims, for the first time on appeal, that his mandatory sentence of life without the possibility of release violates the Connecticut constitution. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal, and, accordingly, we dismiss the appeal.

The facts underlying the petitioner's conviction were set forth previously by this court. "Sometime in the late evening of December 1, 2003, the [petitioner] visited the home of the victims, Donna Sosa and Mary Tomasi, located on Albert Street in Hamden. The [petitioner] was personally familiar with the victims, as his grandmother, with whom he occasionally shared a residence, lived on Green Hill Road, which abutted the victims' property. Intent on acquiring money to support his crack cocaine addiction, the [petitioner] gained access to the victims' home and shortly thereafter attacked Sosa in the kitchen, stabbing her repeatedly in the face, neck and right shoulder. The [petitioner] then proceeded upstairs armed with a ten pound dumbbell retrieved from the living room floor, where he found Tomasi sleeping in her bedroom. After striking Tomasi in the face with the dumbbell, fracturing her skull, the [petitioner] searched through her purse, stealing cash and several blank checks, which he later forged in an attempt to acquire additional funds. Sosa and Tomasi died from these attacks.

"The [petitioner] subsequently was arrested and charged with two counts of murder in violation of [General Statutes] § 53a–54a (a), two counts of felony murder (burglary) in violation of [General Statutes] § 53a–54c and one count of capital felony in violation of [General Statutes] § 53a–54b (7). A jury trial followed and the [petitioner] was convicted on all counts. At sentencing, the court merged the conviction of the murder and felony murder charges with the capital felony conviction, imposing a term of life imprisonment without the possibility of release." *State* v. *Haughey*, 124 Conn. App. 58, 60–61, 3 A.3d 980, cert. denied, 299 Conn. 912, 10 A.3d 529 (2010). This court affirmed the petitioner's convictions on appeal. Id., 75.

On July 1, 2011, the petitioner filed an initial petition for a writ of habeas corpus, which he amended on January 6, 2015. In his amended petition, the petitioner raised three claims, alleging that (1) his trial counsel rendered ineffective assistance of counsel; (2) his appellate counsel rendered ineffective assistance of counsel; and (3) his life sentence without the possibility of release is cruel and unusual punishment. The only claim subject to this appeal, however, is the petitioner's claim that his mandatory life sentence violates the eighth amendment's prohibition against cruel and unusual punishment. A trial on the merits was held before the habeas court on April 7, 8, and 9, 2015. On June 30, 2015, the habeas court issued a memorandum of decision, denying the petitioner's amended petition.

Thereafter, the petitioner filed a petition for certification to appeal. After the court denied the petition for certification to appeal, this appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the "procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Castonguay* v. *Commissioner of Correction*, 300 Conn. 649, 657–58, 16 A.3d 676 (2011).

I

The petitioner first claims that the habeas court improperly concluded that he was not entitled to an individualized, proportionate sentencing hearing, as articulated in *Miller*, because he was twenty-five years old at the time of the subject offenses. We conclude that the court did not abuse its discretion in rejecting the petition for certification to appeal with regard to this claim.

The following facts and procedural history are relevant to our discussion of this claim. At the habeas trial, the petitioner argued that his sentence was cruel and unusual punishment because he was not afforded an individualized sentencing hearing as described in the United States Supreme Court decision in *Miller* and our Supreme Court's decision in *State* v. *Riley*, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied,      U.S.      , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016). Although the petitioner acknowledged that *Miller* and *Riley* pertain to juvenile offenders, i.e., individuals under the age of eighteen, he nonetheless argued that his youthful characteristics were akin to that of a juvenile offender.

In support of his claim, the petitioner testified and described his childhood and drug use. He testified to being the victim of physical abuse and neglect throughout his childhood. He also stated that he abused drugs and began using steroids between the ages of eighteen and nineteen. According to the petitioner, he took to substance abuse to compensate for underlying issues relating to his childhood that he was struggling with. The petitioner expressed that he continued abusing drugs until his arrest for the subject offenses.

In addition to the petitioner's testimony, Patrick Nickoletti, Jonathan Raub, and Frank DiCataldo were called as expert witnesses to describe adolescent brain development, how substance abuse impacts that development, and the specific circumstances of the petitioner's development. Nickoletti, a professor of psychology, discussed brain development during young adulthood. Specifically, he discussed neurological development during adolescence, presented scientific evidence relating to relevant risk factors that can impact early development, and provided his assessment of the petitioner. Nickoletti further testified that the characteristics that put young adults at risk—impulsivity, recklessness, and poor judgment—are connected to psychological changes in the brain during development. Raub's testimony described the psychiatric and behavioral effects of steroid abuse. According to Raub, a psychiatrist, steroid abuse negatively impacts an individual's cognitive faculties. Finally, DiCataldo, a forensic psychologist, outlined the steps that the petitioner has taken to overcome his addictions and his efforts to rehabilitate while imprisoned.

In rejecting the petitioner's claim, the habeas court

stated in relevant part: "It is not the duty of a trial court to make new law; it is the duty of the trial court to apply existing law. No matter how persuasive or interesting the neuroscience [presented] by [the] petitioner may be, the law is clear. Juvenile means under age eighteen. That eighteen year limit is of recent vintage with a change in the law made by the General Assembly a few years ago. The proper venue, if there is to be a change such as proposed by the petitioner, is not in a trial court, but before the Connecticut legislature. If such a change is enacted into law, then this and other courts will have authority to take the action requested by the petitioner. Until then, there is no such authority."

The habeas court also relied on the Washington Court of Appeals' decision in *State* v. *Hart*, 188 Wn. App. 453, 353 P.3d 253 (2015), in its analysis. The defendant in *Hart* was in his twenties at the time of the charged offense, and suffered from antisocial personality disorder and substance abuse. Id., 456. He raised an argument akin to the petitioner's argument in the present appeal, i.e., his youthful characteristics warranted an individualized sentencing determination as set forth in *Miller*, despite being more than eighteen years old. Id., 460. In support of that argument, the defendant urged the court to "consider and apply the emerging neuroscience discussed in *Miller* to youthful offenders aged [eighteen to twenty-five]." Id., 465. The defendant in *Hart* did not present any authority in which a court has determined that an offender in his twenties is a juvenile, and the court rejected his claim. The habeas court ultimately concluded that the holding in *Hart* was "highly persuasive and adopt[ed] the same reasoning."

On appeal, the petitioner is, in essence, challenging the constitutionality of the relevant sentencing statute imposing his mandatory sentence of life imprisonment without the possibility of release.[2] The standard of review is well settled. "A challenge to [t]he constitutionality of a statute presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *State* v. *Taylor G.*, supra, 315 Conn. 741.

With respect to the merits of the petitioner's claim, our discussion is primarily guided by the United States Supreme Court's decisions in *Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), *Graham* v. *Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller* v. *Alabama*, supra, 567 U.S. 460, which established a set of rules governing the sentencing of juvenile offenders.[3] That precedent recently was addressed by our Supreme Court in *State* v. *Taylor G.*, supra, 315 Conn. 734, which involved a mandatory minimum sentence imposed on a juvenile that allegedly violated the eighth amendment's prohibition against cruel and unusual punishment and provided an overview of the guiding authority.

In *Taylor G.*, our Supreme Court explained that

*Roper*, *Graham*, and *Miller* "recognized that, because the eighth amendment prohibition against cruel and unusual punishment is based on the principle that punishment should be graduated and proportioned to the offender and the offense, courts must consider mitigating evidence of youth and immaturity when sentencing juvenile offenders. Thus, applying this principle, the death penalty is a disproportionate sentence for juvenile offenders, regardless of the crime; see *Roper* v. *Simmons*, supra, 543 U.S. 573–75; life imprisonment without the possibility of [release] is a disproportionate sentence for juveniles convicted of a nonhomicide crime; *Graham* v. *Florida*, supra, 560 U.S. 74; and mandatory life imprisonment without the possibility of [release] is a disproportionate sentence for juveniles convicted of a homicide, although a sentence of life imprisonment without the possibility of [release] may be deemed appropriate following consideration of the child's age-related characteristics and the circumstances of the crime. See *Miller* v. *Alabama*, supra, [567 U.S. 478]." (Emphasis omitted.) *State* v. *Taylor G.*, supra, 315 Conn. 743–44. "*Graham*, *Roper*, and [the court's] individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without [the] possibility of [release], regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes [at issue] violate this principle of proportionality . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 744, quoting *Miller* v. *Alabama*, supra, 489.

In the wake of *Miller*, our Supreme Court in *State* v. *Riley*, supra, 315 Conn. 637, was tasked with determining "the constitutional parameters of when a life sentence without parole may be imposed in the exercise of the sentencing authority's discretion on a juvenile homicide offender." Id., 640. Prior to *Riley*, "nothing in our [state's] sentencing scheme specifically required the trial court . . . to consider, let alone give mitigating weight to, the defendant's age at the time of the offense or the hallmarks of youth." Id., 659. In *Riley*, our Supreme Court applied *Miller* and held that a homicide offender under the age of eighteen sentenced to 100 years imprisonment was entitled to a sentencing proceeding "that conforms to the dictates of *Miller*." Id., 661.

Here, the petitioner claims that he is entitled to the same individualized sentencing proceeding as articulated in *Miller*. Specifically, he argues that he is constitutionally entitled to the same individualized sentencing as that afforded to offenders under the age of eighteen because the risk factors associated with imposing unconstitutionally harsh sentences on juveniles remain present through the age of twenty-five, the age at which

the petitioner committed the subject offenses. His argument, however, hinges on whether being older than eighteen at the time of the subject offense is dispositive under this analysis. We conclude that it is.

Expanding the application of *Miller* to offenders eighteen years of age or older simply does not comport with existing eighth amendment jurisprudence pertaining to juvenile sentencing. The United States Supreme Court in *Miller* held "that mandatory life without parole for those *under the age of* [*eighteen*] at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." (Emphasis added; internal quotation marks omitted.) *Miller* v. *Alabama*, supra, 567 U.S. 465. Furthermore, when limiting the death penalty to offenders eighteen years of age or older, the United States Supreme Court in *Roper* recognized that "[d]rawing the line at [eighteen] years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns [eighteen]. By the same token, some under [eighteen] have already attained a level of maturity some adults will never reach. . . . The age of [eighteen] is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest." *Roper* v. *Simmons*, supra, 543 U.S. 574.

*Miller* and *Roper*, alone, appear to be dispositive on this issue as both decisions contemplated and decided that eighteen is the age at which the line is to be drawn for juvenile sentencing for purposes of eighth amendment analysis. Nonetheless, the Connecticut Supreme Court also has recognized eighteen as the appropriate benchmark in applying *Miller*. Specifically, our Supreme Court in *Riley* and *Taylor G.* recognized that juveniles were offenders under the age of eighteen. *State* v. *Riley*, supra, 315 Conn. 640 n.1 ("[w]e use the term juvenile offenders to refer to persons who committed a crime when they were younger than eighteen years of age"); *State* v. *Taylor G.*, supra, 315 Conn. 741 n.7, (in discussing *Graham*, *Miller*, and *Roper*, court stated that "[t]he term 'juvenile offenders' refers in all three cases to offenders who were under the age of eighteen when they committed their crimes"). Moreover, other courts applying *Miller* to similar sentencing schemes also have recognized that juvenile offenders are individuals that are under the age of eighteen at the time of the offense.[4]

We further note one case in particular, *United States* v. *Marshall*, 736 F.3d 492 (6th Cir. 2013), which involved a claim similar to the petitioner's claim here. The defendant in *Marshall* claimed that his mandatory sentence for possession of child pornography was unconstitutional under the Supreme Court's reasoning in *Miller* due to his growth hormone deficiency. Id., 498. The

sentencing court was presented with expert testimony explaining that "the adolescence period does not end at [eighteen] but actually extends into an individual's [mid-twenties]" and that "the only way that [the defendant was] not still a juvenile [was] his chronological age." (Internal quotation marks omitted.) Id., 496.

In rejecting the defendant's argument and affirming his mandatory five year sentence, the United States Court of Appeals for the Sixth Circuit recognized that "[c]hronological age sets the boundaries for determining whether an individual is eligible to drive, vote, marry, buy and drink alcohol, be drafted, watch certain movies, and hold certain political offices. None of these age-based privileges and responsibilities ignore chronological age in favor of mental age." Id., 499. The court also considered that "an approach that ignores chronological age in favor of other aspects of maturity should cut both ways. Individuals under 18 with the mental maturity of adults would have to be classified as adults for purposes of the Eighth Amendment. This approach is unthinkable; the Supreme Court would never accept such an end-run around the constitutional protections for chronological juveniles." Id. Ultimately, the court concluded that the defendant "is at the very most an immature adult" and "[b]ecause [the defendant] is not a juvenile, he does not qualify for the Eighth Amendment protections accorded to juveniles." Id., 500.

Although the evidence presented by the petitioner suggests that some youthful characteristics remain present after an individual reaches the age of eighteen, the law is clear. Simply put, an offender who has reached the age of eighteen is not considered a juvenile for sentencing procedures and eighth amendment protections articulated in *Miller*. The petitioner has not presented any authority suggesting otherwise, and, to this court's knowledge, no federal court or state court in this state or any other state has determined that an offender in his or her mid-twenties is considered a juvenile for purposes of *Miller*.

In sum, the petitioner has failed to demonstrate that the issues raised on appeal are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions raised deserve encouragement to proceed further. Eighth amendment jurisprudence relating to the sentencing of juvenile offenders unequivocally recognizes a juvenile offender as an individual who has not attained the age of eighteen. Although nothing prevents a defendant from arguing that characteristics of youth or immaturity should be considered at sentencing, there simply is no constitutional obligation imposed on the trial court to consider such factors once an offender reaches the age of eighteen. Thus, we conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

## II

The petitioner next claims that his mandatory sentence of life imprisonment without the possibility of release violates the prohibition of cruel and unusual punishment under the due process provisions contained in article first, §§ 8 and 9 of the Connecticut constitution. For the following reasons, we decline to review this claim.

As our standard of review set forth previously in this opinion makes clear, "an appeal following the denial of a petition for certification to appeal from the judgment denying a petition for a writ of habeas corpus is not the appellate equivalent of a direct appeal from a criminal conviction. Our limited task as a reviewing court is to determine whether the habeas court abused its discretion in concluding that the petitioner's appeal is frivolous. Thus, we review whether the issues for which certification to appeal was sought are debatable among jurists of reason, a court could resolve the issues differently or the issues are adequate to deserve encouragement to proceed further. . . . Because it is impossible to review an exercise of discretion that did not occur, we are confined to reviewing only those issues which were brought to the habeas court's attention in the petition for certification to appeal." (Citation omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 216, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

The record reveals that the petitioner did not raise the present state constitutional claim before the habeas court. More importantly, the petitioner did not raise that claim in his petition for certification to appeal, or his application for waiver of fees, costs, expenses, and his appointment of counsel on appeal. We cannot conclude that the court abused its discretion, as it relates to this claim, because the petitioner did not raise this claim when he requested that the court rule on his petition for certification to appeal. See *Mercado* v. *Commissioner of Correction*, 85 Conn. App. 869, 872, 860 A.2d 270 (2004), cert. denied, 273 Conn. 908, 870 A.2d 1079 (2005). "This court has determined that a petitioner cannot demonstrate that the habeas court abused its discretion in denying a petition for certification to appeal if the issue that the petitioner later raises on appeal was never presented to, or decided by, the habeas court. . . . Under such circumstances, a review of the petitioner's claims would amount to an ambuscade of the [habeas] judge. . . . *Because the petitioner failed to raise this claim in his petition for certification to appeal or in his application for waiver of fees, costs and expenses and appointment of counsel on appeal*, we decline to afford it review. . . . *Perry* v. *Commissioner of Correction*, 131 Conn. App. 792, 796–97, 28 A.3d 1015 (petitioner's claim that trial court issued oral decision from bench in absence of counsel

not reviewable when claim not raised in petition for certification to appeal), cert. denied, 303 Conn. 913, 32 A.3d 966 (2011); see also *Melendez* v. *Commissioner of Correction*, 141 Conn. App. 836, 841, 62 A.3d 629 (2013) (improper to consider issues not raised distinctly before habeas court in petition for certification to appeal); *Campbell* v. *Commissioner of Correction*, 132 Conn. App. 263, 267, 31 A.3d 1182 (2011) (consideration of issues not distinctly raised in petition for certification to appeal would amount to ambuscade of habeas judge)." (Emphasis in original; internal quotation marks omitted.) *Tutson* v. *Commissioner of Correction*, supra, 144 Conn. App. 217. In light of the foregoing, we decline to review this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The United States Supreme Court's decision in *Miller* v. *Alabama*, supra, 567 U.S. 460, is one of several decisions that determined that sentencing schemes imposing harsh punishments on juveniles is cruel and unusual punishment. Specifically, the court in *Miller* held that mandatory sentencing schemes that impose a life sentence without the possibility of release on juvenile homicide offenders without conducting an individualized sentencing hearing at which the trial court may consider mitigating factors associated with adolescence is cruel and unusual punishment. Id., 465.

[2] The petitioner was sentenced pursuant to General Statutes § 53a-35a.

[3] The term "juvenile offenders" refers in all three cases to offenders who were under the age of eighteen when they committed their respective crimes.

[4] Examples of these decisions are numerous and were noted in the brief of the respondent, the Commissioner of Correction. See, e.g., *United States* v. *Schill*, 740 F.3d 1347, 1349 (9th Cir. 2014) (mandatory sentence on forty-five year old defendant did not require individualized sentence because defendant "not a juvenile"); *United States* v. *Reingold*, 731 F.3d 204, 215 (2d Cir. 2013) (developmentally immature nineteen year old nonetheless considered adult for purposes of *Miller*); *United States* v. *Heaton*, 549 Fed. Appx. 835, 836, 838 (11th Cir. 2013) (failing to consider sexual abuse and post-traumatic stress disorder of thirty-eight year old defendant during sentencing accords with *Miller*).