# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53262-0-II |
| Respondent, | |
| v. | |
| WARREN MATTHEW HELZER, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Warren Helzer appeals the "Order Correcting Judgment and Sentence & Correcting Order Revoking Suspended Sentence," and he appeals the community custody conditions in his original 2010 judgment and sentence. He argues that (1) the trial court erred by determining the judgment and sentence had a clerical error, (2) the trial court's order changed his determinate sentence to an indeterminate sentence, (3) the order violated double jeopardy and due process, (4) the trial court erred by allowing the State's motion which was time barred, (5) the State breached its plea agreement, and (6) the previous trial court erred in imposing various community custody conditions.

We hold the error in the original judgment and sentence and Order Revoking Sentence was a clerical error and that the trial court did not change Helzer's sentence, the order did not violate double jeopardy and due process, the State's motion was not time barred, the State did not breach the plea agreement, and the various community custody conditions are not appealable.

We affirm.

FACTS

I. 2009 AND 2010 PROCEEDINGS

Helzer pleaded guilty to three counts of first degree child molestation that occurred between November 2001 and June 2005. In exchange, the State agreed to recommend a "[special sex offender sentencing alternative (SSOSA)], 130 months incarceration with 124 months suspended." Clerk's Papers (CP) at 10.

His plea agreement stated, "I Understand That: (a) Each crime with which I am charged carries a maximum sentence, a fine, and a **Standard Sentence Range**." *Id.* at 7. It went on to give a standard range of actual confinement as 98 to 130 months and a maximum term of life for each count.

The plea agreement stated that sex offenses committed on or after September 2001 would be sentenced under former RCW 9.94A.712 (2001) and "[i]f this offense is for any of the offenses listed in subsections (aa) . . . the judge will impose a maximum term of confinement consisting of the statutory maximum sentence of the offense and a minimum term . . . within the standard range." *Id.* at 8-9. First degree child molestation is listed as an offense in subsection (aa). It went on that the "minimum term of confinement that is imposed may be increased by the Indeterminate Sentence Review Board [(ISRB)] if the Board determines by a preponderance of the evidence that it is more likely than not that I will commit sex offenses if released from custody." *Id.* at 9.

At the end of the agreement it stated that "[m]y lawyer has explained to me, and we have fully discussed, all of the above paragraphs . . . I understand them all." *Id.* at 14. The trial court found "[t]he defendant's lawyer had previously read to him or her the entire statement above and that the defendant understood it in full." *Id.*

In December 2009, the trial court held a hearing on the guilty pleas. Helzer stated that he had enough time to review the paperwork and that he had no questions. The court explained the "maximum penalty is life in prison . . . [t]he standard sentencing range is 98 to 130 months, and then you could be on community custody for a life term as well." *Id.* at 102. Helzer stated he was aware of the penalties. The court noted the State recommended "a SSOSA or suspended sentence with 124 months suspended." *Id.* The court accepted Helzer's guilty pleas.

Additionally, the court ordered the Department of Corrections (DOC) to perform a presentence investigation (PSI). The PSI noted the standard range for first degree child molestation with Helzer's offender score would be life and that the minimum would be set between 98 and 130 months with ISRB determining his actual release date.

In February 2010, the court held the sentencing hearing. At the hearing, the State asked the court "to impose a SSOSA . . . 130 months . . . [and] to suspend 124 months." *Id.* at 110. The court stated that it was "going to adopt the SSOSA on the conditions listed." *Id.* at 133. The court did not say at the hearing that it was imposing an indeterminate sentence with a minimum term of 130 months subject to ISRB review and a maximum of life.

However, the judgment and sentence in section 2.3 explains that the standard range for all three counts was 98 to 130 months and the maximum term is life. It also reflects that Helzer was sentenced to 130 months on each count. It states the "[a]ctual number of months of total confinement ordered is: 130 Months." *Id.* at 25. Under section 4.4 "Appendix 'G' and 'H'" are hand written. *Id.* at 24. Appendix H states that "[d]efendant additionally is sentenced on convictions herein, for the offenses under [former] RCW 9.94A.712." *Id.* at 37.

In October 2010, the court held a revocation hearing. At the hearing the trial court revoked Helzer's SSOSA. The trial court did not say anything about the minimum sentence, maximum sentence, or the ISRB at the hearing. The court ordered that "the suspended standard range sentence be revoked . . . and the defendant [be] committed to the [DOC] for a period of 130 months." *Id.* at 69. The order stated Helzer "is additionally sentenced to a term of life year(s)[sic] community placement." *Id.* Helzer appealed the revocation. This court affirmed. *State v. Helzer*, noted at 167 Wn. App 1048 (2012).

After the revocation hearing, Helzer was transported to the Washington Corrections Center (WCC). On October 29, 2010, WCC sent an e-mail to the prosecutor asking if Helzer was sentenced under RCW 9.94A.507. It noted Helzer "was sentenced to 130 months and community placement of Life but there is no reference to a minimum and maximum term." CP at 328. The prosecutor confirmed Helzer was sentenced under RCW 9.94A.507 with a minimum of 130 months and a maximum of life.[1]

## II. 2019 PROCEEDINGS

In February 2019, Helzer petitioned the superior court in Snohomish County to be released. Helzer argued that the ISRB did not have jurisdiction over him and that he was to be released in May "without regard to an orders [sic] of the ISRB." *Id.* at 349-50. He stated he was serving a determinate sentence of 130 months.

---

[1] Helzer was sentenced in 2010, but his crimes were committed between November 2001 and June 2005. Therefore, he was properly sentenced under former RCW 9.94A.712 as referenced in the record. However, in 2008, former RCW 9.94A.712 was recodified to RCW 9.94A.507. LAWS OF 2008, ch. 231, § 56. Thus, WCC and the prosecutor erroneously referenced RCW 9.94A.507 rather than former RCW 9.94A.712. However, this error and the recodification are irrelevant to our analysis of Helzer's appeal as there were no changes to the statute that bear upon his claims.

Following Helzer's petition, the State moved to correct the judgment and sentence as well as the order revoking the suspended SSOSA sentence "to make it clear that the defendant's sentence is indeterminate." *Id.* at 144. In response, Helzer again asserted that he was serving a determinate sentence of 130 months, which is what he contended the trial court originally imposed.

At the hearing, the trial court found that "based on . . . the totality of the circumstances, when reviewing the record" there was a clerical error. Verbatim Report of Proceedings (VRP) at 46. The court explained that clerical errors include omissions of language. The trial court went on to note that the plea had been reviewed by Helzer, the attorneys, and the court. The court noted that the plea form clearly referenced the statute that applied. The trial court observed that the paragraphs that did not apply to Helzer's case were crossed out and that Helzer had initialed next to those paragraphs, suggesting that this eliminated any confusion and that Helzer "knew what did not apply." *Id.* at 47.

The PSI, the trial court further noted, stated that the ISRB will determine Helzer's actual release date. The PSI also stated that "the standard sentence was . . . a minimum set between 98 and 130 months." *Id.* at 48. The trial court believed "Helzer knew, . . . the attorneys knew, . . . [and] the Court knew" that Helzer's sentence was indeterminate. *Id.* The trial court explained that the "Court is presumed to follow the law" and that it "had before it the PSI as well as the plea form." *Id.*

The trial court stated it was unfortunate that the "additional language of 'to life' was not included" in the judgment and sentence or the order revoking the SSOSA. *Id.* However, the trial court observed that the statute provided for an indeterminate sentence up to the maximum of life, and the maximum sentence was noted in the PSI and in the plea form. Additionally, there "needed

to be a minimum that was set . . . with then the [ISRB] having oversight in terms of when his actual release would be . . . [a]nd that is what was apparent—was available to him." *Id.* at 50. The trial court also noted that the "information . . . in the PSI, . . . [was] consistent with the statute . . . that applied at this time." *Id.*

The court went on to say that "it had been intended that [Helzer] be sentenced—to a minimum of 130 months and the maximum life, as had been detailed both in the PSI as well as the plea and sentence." *Id.* The court explained that it was "a Scrivener's error that the 130 was left without the 'to life' because it was apparent from the get-go that that is what [Helzer] would be required to serve if he did not successfully complete the SSOSA." *Id.* at 50-51.

The court granted the motion and ordered the judgment and sentence as well as the order revoking the SSOSA to be corrected to indicate the sentence is 130 months to life subject to the ISRB.

Helzer appeals the corrected judgment and sentence.

DISCUSSION

I. CLERICAL ERROR

Helzer argues the trial court erred by concluding that there was a clerical error in the original judgment and sentence. Helzer contends that if there was an error, it was a judicial error because the trial court imposed a set number of months to be served and there was nothing to indicate in the record that this was unintentional. Stated another way, Helzer argues that the trial intended to impose an illegal sentence. And if the error was a judicial error, Helzer argues that it cannot be corrected by a CrR 7.8 motion.

We disagree.

6

A. LEGAL PRINCIPLES

Clerical mistakes in judgments or orders may be corrected at any time. CrR 7.8(a). A clerical error is an error "by a clerk or other judicial or ministerial officer in writing or keeping records." *State v. Hendrickson*, 165 Wn.2d 474, 479, 198 P.3d 1029 (2009). They are errors "that do not embody the trial court's intention as expressed in the trial record." *State v. Morales*, 196 Wn. App. 106, 117, 383 P.3d 539 (2016). Courts may amend "to correct language that did not correctly convey the court's intention" or add language that was unintentionally left out of the original judgment. *Id.* at 117 (quoting *Presidential Estates Apartment Assocs. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996)).

"To determine whether an error is clerical or judicial, we look to 'whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial.'" *State v. Snapp*, 119 Wn. App. 614, 627, 82 P.3d 252 (2004) (quoting *Presidential*, 129 Wn.2d at 326). If a judgment contains a clerical error, the judgment should be corrected so that the language correctly reflects the court's intention. *Presidential*, 129 Wn.2d at 326. This can include adding the language the court inadvertently omitted. *Id.*

If the amended language does not convey the intention of the trial court, then it is a judicial error and the court is not allowed to make the amendment. *Id.*; *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011).

Former RCW 9.94A.712, under which Helzer was sentenced, prescribed the penalties applicable to certain sex offenses. For offenders sentenced under this statute, the trial court was required to sentence the offender to a minimum term and a maximum term, with the maximum term consisting of the maximum sentence for the offense. Former RCW 9.94A.712(3). With

certain exceptions, the trial court was required to set the minimum term within the standard range for the offense. Former RCW 9.94A.712(3).

B. ANALYSIS

Here, the trial court found that the original sentencing court had "intended that [Helzer] be sentenced—to a minimum of 130 months and the maximum life, as had been detailed both in the PSI as well as the plea and sentence." VRP at 50. The trial court noted it was unfortunate that the "additional language of 'to life' was not included." *Id.* at 48. But the trial court believed, based on its review of the sentencing record, that "Helzer knew, . . . the attorneys knew, . . . [and] the Court knew." *Id.* The court further explained that it was "it was apparent from the get-go that that is what [Helzer] would be required to serve if he did not successfully complete the SSOSA." *Id.* 50-51. The trial court highlighted several points in the record across multiple documents that indicated the mindset of the parties, and specifically the judge.

The plea agreement explained there is a standard range for the minimum sentence and the law required a maximum of life. The plea agreement also advised Helzer that the "minimum term of confinement that is imposed may be increased by the [(ISRB)]." CP at 9. The trial judge also explained at the plea hearing the "maximum penalty is life in prison . . . [t]he standard sentencing range is 98 to 130 months, and then you could be on community custody for a life term as well." *Id.* at 102. Helzer stated he understood.

Certain aspects of a sentence like statutory maximums and supervision by the ISRB are set by the legislature and are not changeable by the sentencing court. The original sentencing court's discretion in this case included selecting a sentence within the standard range and the decision whether to impose a SSOSA. The sentencing court's discretion did not include altering the

maximum penalty or disallowing supervision of the sentence by the ISRB. As the State notes, "the maximum term applies by operation of law" and is not alterable by the exercise of discretion. Br. of Resp't at 14. The minimum sentence of 130 months and the decision whether to grant the SSOSA were the matters over which the trial court had discretion.

We hold the error in question was a clerical error, and thus affirm the Order Correcting Judgment and Sentence & Correcting Order Revoking Suspended Sentence.

## II. DOUBLE JEOPARDY[2]

Based on his claim that the correction of the judgment and sentence was a judicial error rather than a clerical error, a claim with which we disagree, Helzer argues that altering his sentence after it had been finalized for a decade violated his right to be free from double jeopardy. We disagree.

Both the federal and state double jeopardy clauses protect against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Hart*, 188 Wn. App. 453, 457, 353 P.3d 253 (2015). "The prohibition on double jeopardy generally means that a person cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense." *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). "The prohibition against double jeopardy applies when (1) jeopardy previously attached, (2) jeopardy was terminated, and (3) the defendant

---

[2] Helzer purports to raise a due process claim, but a review of his brief shows that he makes no argument related to due process. He merely notes, once in the first paragraph and once in the final sentence of this section of his brief that the same state and federal constitutional provisions which bar double jeopardy also guarantee due process of law. Under RAP 10.3(a)(6) we do not review issues not argued, briefed, or supported with citation to authority. *Christian v. Tohmeh*, 191 Wn. App. 709, 728, 366 P.3d 16 (2015). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit appellate review." *Id.*

is again prosecuted for the same offense." *State v. George*, 160 Wn.2d 727, 741, 158 P.3d 1169 (2007). The Supreme Court has held that "resentencing to correct an erroneously imposed lenient sentence does not violate the protection against double jeopardy." *State v. Freitag*, 127 Wn.2d 141, 145, 896 P.2d 1254, 905 P.2d 355 (1995). We review alleged violations of double jeopardy de novo. *Villanueva-Gonzalez*, 180 Wn.2d at 979-80.

Here, as noted above, the court's order corrected a clerical error and did not change Helzer's sentence. Helzer's sentence has always been indeterminate with a maximum of life. The trial court merely corrected the written order to accurately reflect the sentence; it did not amend the sentence. Helzer has not suffered multiple punishments. Rather, Helzer is serving the sentence that was originally imposed.

We hold that Helzer's right to be free from double jeopardy has not been violated.

### III. TIME BARRED

Helzer contends that the State's motion to correct his judgment and sentence and order revoking the SSOSA is not timely. Helzer acknowledges that CrR7.8(a) allows for a clerical mistake to be corrected at any time. However, he argues the "provisions must be read in conjunction with the procedures and time limits set up . . . to address changes to final criminal judgments." Br. of Appellant at 26. He argues that the State's motion falls under the one year time limit in RCW 10.73.090 for filing a petition for collateral attack. Additionally, he contends that because the DOC could have sought correction of the judgment and sentence, the State was effectively barred from bringing this CrR 7.8 motion.

But Helzer cites no authority for his contention that RCW 10.73.090 modifies the portion of CrR 7.8(a) that allows for a clerical mistake to be corrected at any time. Helzer argues that

because RCW 10.73.090 governs collateral attacks on judgments, it controls this case. But the State's motion to correct this clerical error was not a collateral attack on the judgment because it did not ask the trial court to *change* its judgment. On the contrary, it merely asked the trial court to more clearly memorialize its judgment.

Helzer additionally contends that because the DOC could have sought correction of the judgment and sentence pursuant to RCW 9.94A.585(7), the State was effectively barred from bringing this CrR 7.8 motion. But Helzer again cites no authority for this claim. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). The State's motion was timely brought under CrR 7.8(a), which allows for a clerical mistake to be corrected at any time.

We hold the State's motion was not time barred.

## IV. BREACH OF THE PLEA AGREEMENT

Helzer argues that the State breached its plea agreement with Helzer because, he claims, the State originally agreed to recommend a *determinate* 130 month sentence despite the fact that the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, requires sentences for first degree child molestation committed after September 1, 2001 to be indeterminate. He contends that by bringing the motion to correct the judgment and sentence, the State undermined the plea agreement.

The State responds that the plea offer merely addressed those aspects of the sentence over which the trial court had discretion, which would not have included altering the maximum sentence for the crime. The State further points to the presentence report, which clearly stated the agreed

recommendation of the parties was "life with a minimum set at 130 months," and that Helzer did not challenge the DOC's interpretation of the plea agreement at the sentencing hearing. Br. of Resp't at 20 (internal quotation marks omitted). We agree with the State.

The plea agreement showed that the standard sentencing range was 98 to 130 months with a maximum of life. The agreement clearly stated Helzer was being sentenced under former RCW 9.94A.712. The agreement explained because of that statute "the judge will impose a maximum term of confinement consisting of the statutory maximum sentence of the offense and a minimum term of confinement . . . within the standard range for the offense." CP at 8-9. It went on that the "minimum term of confinement that is imposed may be increased by the [ISRB]." *Id.* at 9.

In its recommendation the State did write "SSOSA, 130 months incarceration with 124 months suspended." *Id.* at 10. However, as the State points out, the sentencing court cannot, either based on an agreement by the parties or of its own accord, alter the maximum penalty for an offense. The maximum penalty is set by the legislature and cannot be altered as part of a plea agreement. The plea agreement here covered only those matters over which the trial court had discretion, to wit: the minimum term within the standard range.

We hold that the State did not breach the plea agreement.

## V. COMMUNITY CUSTODY CONDITIONS

Helzer challenges several community custody conditions that were imposed as part of his 2010 judgment and sentence. Helzer acknowledges that he did not appeal any community custody condition when the judgment and sentence was entered. However, he argues community custody conditions can be argued for the first time on appeal "if they impact constitutional rights or are

illegal or erroneous as a matter of law." Br. of Appellant at 33. Additionally, he argues that because the trial court modified his original sentence that he now has the right to appeal.

A notice of appeal must be filed in the trial court within 30 days after the trial court has entered the decision to be reviewed. RAP 5.2(a), (e). This 30 day time limit can be extended due to some specific and narrowly defined circumstances. *Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367, 849 P.2d 1225 (1993). Filing of certain post-trial motions, including motions for reconsideration, may extend this deadline. *Id.* at 367; RAP 5.2(e). Motions to vacate judgment are not among the list of motions that extend the deadline to appeal. RAP 5.2(e).

It is well settled that the correction of an erroneous portion of a judgment and sentence "does not affect the finality of that portion of the judgment and sentence that was correct and valid when imposed." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 877, 50 P.3d 618 (2002). Here, community custody conditions were imposed in 2010. The time to challenge those conditions has expired. Helzer had an opportunity to appeal these conditions and he failed to seek timely review of the conditions. The correction to the judgment and sentence did not affect the community custody conditions and therefore did not open that portion of the 2010 judgment and sentence to appeal. *Id.* at 877.

We decline to consider Helzer's challenge to his community custody conditions.

CONCLUSION

We hold that the correction to Helzer's judgment and sentence and order revoking his suspended sentence involved a clerical error. We further hold that Helzer's right to be free from double jeopardy was not violated when the trial court corrected his judgment and sentence, that

the State's motion was not time barred, and that the State did not breach the plea agreement. Finally, we decline to reach Helzer's challenge to his community custody conditions because the challenge is not timely. Accordingly, we affirm the Order Correcting Judgment and Sentence & Correcting Order Revoking Suspended Sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

MELNICK, J.