******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# JERMAINE WOODS *v.* COMMISSIONER
## OF CORRECTION
### (AC 41987)

Lavine, Alvord and Keller, Js.

*Syllabus*

The petitioner, who had previously been convicted of murder, sought a writ of habeas corpus, claiming that his sentence was illegal because evidence of his diminished capacity and mitigating circumstances were not considered at trial and that his equal protection rights were violated by the state's decision to try him for murder for a third time after his first petition for a writ of habeas corpus was granted. The habeas court granted the motion to dismiss filed by the respondent, the Commissioner of Correction, and rendered judgment thereon, and, thereafter, denied the petitioner's petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion by granting the respondent's motion to dismiss the third petition for a writ of habeas corpus without holding a hearing; a hearing on the petition was not required, as the court did not dismiss the petition sua sponte but, instead, pursuant to a motion filed by the respondent and to which the petitioner had filed an objection.

2. The habeas court properly dismissed the petitioner's claim that evidence of his diminished capacity and of mitigating circumstances were not properly presented to the triers of fact.

a. The allegations of the petition could not be construed to allege a claim of ineffective assistance by the petitioner's second habeas counsel and there was no allegation that reasonably could be construed as a direct or indirect reference to the petitioner's second habeas counsel; moreover, the petitioner's claim that trial counsel was ineffective was litigated at the second habeas trial and, thus, was barred by the doctrine of res judicata.

b. The court properly dismissed the petitioner's claim that mitigating circumstances should have been considered at his sentencing for failing to state a claim for which relief could be granted: the petitioner, who was nineteen years old and, therefore, not a child at the time he committed the murder, was not entitled to individualized sentencing; moreover, the petitioner could not prevail on his claim that his fifty year sentence, which was ten years less than the maximum legislatively prescribed sentence, was disproportionate to the crime; furthermore, the court properly dismissed the petitioner's mitigating circumstances claim as procedurally defaulted, as the petitioner failed to raise the claim of mitigating circumstances at sentencing, on direct appeal or at his second habeas hearing, the petitioner could not prevail on his claim that procedural default did not apply to eighth amendment claims predicated on evolving standards of decency evolved when the mitigating circumstances of recent research and understandings in brain development were known and accepted at the time of his third trial and second habeas petition, and the petitioner failed to plead prejudice adequately in his reply in that he failed to allege specific facts demonstrating that if he had offered brain development studies there was a substantial likelihood or reasonable probability that he would have received a lighter sentence.

3. The habeas court properly dismissed the petitioner's equal protection claim on the ground of procedural default.

a. The petitioner failed to meet his burden to establish good cause for failure to raise his equal protection claim in a prior proceeding; although the petitioner asserted in his objection to the respondent's motion to dismiss that he could not raise the claim of vindictive prosecution prior to raising it in his third petition for a writ of habeas corpus, he failed to assert any facts that prevented him from raising his equal protection claim in his second petition for a writ of habeas corpus.

b. The petitioner's equal protection claim also failed on the alternative ground that he failed to state a claim on which habeas relief could be

granted; the petitioner failed to allege any facts to meet his burden to demonstrate the prosecutor's alleged substantial animus toward him, thus, he failed to demonstrate good cause for failing to raise his claim in an earlier proceeding.

Argued December 2, 2019—officially released June 2, 2020

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Kwak, J.*, granted the respondent's motion to dismiss and rendered judgment dismissing the petition; thereafter, the court denied the petitioner's petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Nancy L. Walker*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Jermaine Woods, appeals from the judgment of the habeas court dismissing his third petition for a writ of habeas corpus.[1] The habeas court denied the petitioner's petition for certification to appeal. On appeal, the petitioner claims that the habeas court (1) abused its discretion by denying his petition for certification to appeal, (2) abused its discretion by dismissing his petition without fair notice to him and without holding a hearing on his petition, (3) erred by dismissing count one of his petition alleging that his conviction was illegal because (a) evidence of his diminished capacity was not properly presented at his criminal trial and sentencing and (b) mitigating circumstances warrant reduction of his sentence, and (4) erred by dismissing count two of his petition alleging violation of his constitutional right to equal protection. We dismiss the appeal.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. Given the lengthy history of court proceedings and judicial rulings, a detailed discussion is required. In the underlying criminal matter, the petitioner was charged with murder for fatally shooting Jamal Hall on November 5, 1994. The charge against the petitioner was tried to a jury in December, 1996, but the jury was unable to reach a verdict and a mistrial was declared. The petitioner was retried in January, 1997, and a jury convicted him of murder in violation of General Statutes § 53a-54a (a).[2] The petitioner was sentenced to fifty years imprisonment. His conviction was affirmed in *State* v. *Woods*, 250 Conn. 807, 740 A.2d 371 (1999).[3]

The petitioner thereafter filed a petition for a writ of habeas corpus in which he alleged that his trial counsel was ineffective for failing to prepare an adequate diminished mental capacity defense and that he was actually innocent. See *Woods* v. *Commissioner of Correction*, 85 Conn. App. 544, 545 n.1, 857 A.2d 986, cert. denied, 272 Conn. 903, 863 A.2d 696 (2004). The first habeas court, *Hon. Richard M. Rittenband,* judge trial referee, denied the petition as to the petitioner's actual innocence claim, but granted it with respect to his claim that his trial counsel was ineffective in presenting evidence of the petitioner's diminished capacity. The first habeas court, therefore, granted in part the petition for a writ of habeas corpus and ordered a new trial.[4] Id. The judgment granting the habeas petition was upheld on appeal; id., 545; and the petitioner elected to be tried by a panel of three judges. *State* v. *Woods*, 297 Conn. 569, 572, 4 A.3d 236 (2010). At the petitioner's third criminal trial, the three judge panel convicted him of murder and sentenced him to fifty years imprisonment.[5] Id. The petitioner's conviction again was upheld on direct appeal.[6] Id.

The petitioner filed a second petition for a writ of habeas corpus on November 4, 2008, alleging various claims of ineffective assistance of trial counsel during the third criminal trial, including a claim that the trial counsel failed to timely notify and to adequately prepare the petitioner's expert witness, John H. Felber, a psychiatrist, to testify.[7] The second habeas court, *T. Santos, J.*, denied the second habeas petition. This court upheld the judgment denying the second petition for a writ of habeas corpus in a memorandum decision. *Woods* v. *Commissioner of Correction*, 142 Conn. App. 907, 64 A.3d 1290, cert. denied, 309 Conn. 915, 70 A.3d 39 (2013).[8]

The petitioner filed the present petition for a writ of habeas corpus on July 16, 2013, alleging in count one that his sentence is illegal because evidence of his diminished capacity and mitigating circumstances were not considered at trial and, in count two, that his equal protection rights were violated. In his January 5, 2018 return, the respondent, the Commissioner of Correction, alleged multiple special defenses to the petitioner's claims.

On March 9, 2018, the respondent filed a motion to dismiss the petition pursuant to Practice Book § 23-29[9] on the grounds that the petitioner's claims are precluded by the doctrines of res judicata and collateral estoppel, are procedurally defaulted in that they were not raised at trial or on direct appeal, and failed to state claims for which habeas relief can be granted. The petitioner filed an objection to the motion to dismiss on March 21, 2018.

The third habeas court, *Kwak, J.*, granted the respondent's motion to dismiss in a memorandum of decision on July 16, 2018. With respect to the petitioner's claim that evidence of his diminished capacity was not properly presented during trial, the court determined that evidence of the petitioner's diminished capacity was presented at the petitioner's third criminal and second habeas trials. Moreover, the court found that the petitioner was seeking the same relief in both his second and third petitions for a writ of habeas corpus. The court concluded that the claim concerning the petitioner's diminished capacity was barred by the doctrines of res judicata and collateral estoppel.

The habeas court also found that the petitioner alleged that his sentence was illegal because the sentencing court did not consider evidence of mitigating circumstances prior to imposing sentence. The habeas court found that the petitioner, who was nineteen at the time of the murder, was seeking an individualized sentencing hearing, but determined that the petitioner was not entitled to such a hearing. The court, therefore, concluded that the petitioner's sentence could not be determined to be illegal on the ground alleged and that

there was no habeas corpus relief the court could grant. The habeas court also found that the respondent sought to have the mitigating circumstances claim dismissed on the ground of procedural default because the petitioner did not raise it at trial or on direct appeal. The court found that the petitioner failed to allege any new facts or allege any legally cognizable cause and prejudice to rebut his procedural default, citing *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 788, 971 A.2d 766, cert. denied, 293 Conn. 915, 979 A.2d 488 (2009). See id. (Practice Book § 23-31 (c) requires petitioner to allege facts and cause and prejudice permitting review). The court thus dismissed the allegations of mitigating circumstances as a basis to reduce the petitioner's sentence.

In count two of the third petition, the habeas court found that the petitioner alleged that his rights under the equal protection clause were violated by the state's decision to try him after his first petition for a writ of habeas corpus was granted. More particularly, the petitioner alleged that "Waterbury Chief State's Attorney John Connelly resigned on January 14, 2011, after a federal investigation was launched against him and his longtime friend defense attorney Martin Minella for corruption." He also alleged that Connelly provided favorable treatment to Minella's clients. The petitioner further alleged that he was unable to afford to retain Minella but, if he had retained him, Connelly would have disposed of the petitioner's case and not tried him for a third time. The respondent sought to have the claim dismissed on the ground of procedural default because the petitioner failed to raise this improbable claim in the trial court or on direct appeal. The court found that the petitioner had failed to meet the cause and prejudice standard to overcome the bar of procedural default. The court, therefore, dismissed count two of the petitioner's third petition for a writ of habeas corpus. The petitioner filed a petition for certification to appeal, which the court denied. The petitioner appealed.

I

CERTIFICATION TO APPEAL

The petitioner's first claim is that the court abused its discretion by denying his petition for certification to appeal from the court's judgment dismissing his third petition for a writ of habeas corpus because his appeal is not frivolous. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The

required determination may be made on the basis of the record before the habeas court and the applicable legal principles. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 169 Conn. App. 444, 448, 150 A.3d 1166 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017). On the basis of our review of the petitioner's substantive claims as discussed herein, we conclude that the habeas court did not abuse its discretion by denying the petition for certification to appeal.

## II

### CLAIMS ON APPEAL

On appeal, the petitioner claims that the habeas court abused its discretion by granting the respondent's motion to dismiss his third petition for a writ of habeas corpus challenging the legality of his conviction, which he filed as a self-represented party.[10] At the heart of the petitioner's appellate claims is his contention that the habeas court misconstrued the allegations of his petition. The resolution of the petitioner's appeal, therefore, turns on our construction of the allegations in his third petition for a writ of habeas corpus. At oral argument, the petitioner's appellate counsel conceded that the petition was not artfully pleaded but argued that, under the deferential standard ordinarily afforded self-represented parties, the habeas court's dismissal of the petition should be reversed and the case remanded for a hearing on its merits. We disagree.

"The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 193, 932 A.2d 467 (2007), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008). "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the

reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *McMillion* v. C*ommissioner of Correction*, 151 Conn. App. 861, 869–70, 97 A.3d 32 (2014).

"The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . The petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . A complaint includes all exhibits attached to it. . . .

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the [habeas] court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and *realistically*, rather than narrowly and technically. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the [petition] is insufficient to allow recovery." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 668–69, 931 A.2d 348, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007).

"While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 262, 990 A.2d 910 (2010), appeal dismissed, 303 Conn. 698, 36 A.3d 224 (2012).

As counsel for the petitioner correctly has pointed out on appeal, "[i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of the other parties to construe the rules of practice liberally in favor of the [self-represented] party." (Internal quotation marks omitted.) *Vitale* v. *Commissioner of Correction*, 178 Conn. App. 844, 850, 178 A.3d 418 (2017), cert. denied, 328 Conn. 923, 181 A.3d 566 (2018). "The modern trend . . . is to construe pleadings broadly and realistically, rather than narrowly and tech-

nically. . . . The courts adhere to this rule to ensure that [self-represented] litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . . This rule of construction has limits, however. Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . A habeas court does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings in such a way so as to strain the bounds of rational comprehension." (Citations omitted; internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 569–70, 877 A.2d 761 (2005). There, however, comes a point at which granting *too much* latitude to self-represented parties can simply be unfair to their adversaries.

### III

The petitioner claims that it was improper for the third habeas court to grant the respondent's motion to dismiss without providing him fair notice and without holding a hearing on his third petition for a writ of habeas corpus. In support of his argument, the petitioner relies on our Supreme Court's decision in *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 644 A.2d 340 (1994), which stands for the general proposition that a petitioner is entitled to present evidence in support of his claims. Id., 93. The court, however, noted a narrow exception to the presumption that a hearing is required. "[I]f a previous application brought on the same grounds was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing." (Internal quotation marks omitted.) Id. We disagree that a hearing was required in the present case.

"Whether the habeas court was required to hold a hearing prior to dismissing a habeas petition presents a question of law subject to plenary review. . . . Pursuant to Practice Book § 23-29, the habeas court may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof . . . ." (Citation omitted; internal quotation marks omitted.) *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 339, 199 A.3d 1127 (2018), cert. granted on other grounds, 335 Conn. 901, 225 A.3d 685 (2020). "Although, under Practice Book § 23-40, [h]abeas petitioners generally have the right to be present at any evidentiary hearing and at any hearing or oral argument on a question of law which may be dispositive of the case . . . Practice Book § 23-40 speaks only to the petitioner's right to be present at an evidentiary

hearing when such a hearing is held. Such hearings are not always required, as Practice Book § 23-29 authorizes the court to dismiss a habeas petition on its own motion." (Internal quotation marks omitted.) Id., 340.

In support of his argument, the petitioner relies on *Boyd* v. *Commissioner of Correction*, 157 Conn. App. 122, 115 A.3d 1123 (2015). "This court previously has held that it is an abuse of discretion by the habeas court to dismiss a habeas petition sua sponte under Practice Book § 23-29 without fair notice to the petitioner and a hearing on the court's own motion to dismiss." Id., 125. The facts of the present case are distinguishable from those in *Boyd*. The habeas court in the present case did not dismiss the petition sua sponte. The respondent filed a motion to dismiss and the petitioner filed an objection to the motion to dismiss. We therefore conclude that it was not improper for the habeas court to grant the respondent's motion to dismiss without holding a hearing.

IV

The petitioner claims that the third habeas court improperly dismissed count one of his third petition for a writ of habeas corpus (1) "because evidence of his diminished capacity was not properly presented during the criminal trial [and sentencing]," and (2) "his sentence should be reduced because mitigating circumstances existed." We disagree that the habeas court improperly dismissed count one of the third petition for a writ of habeas corpus.

A

The petitioner claims that the habeas court improperly dismissed his claim that evidence of his diminished capacity was not properly presented during his criminal trial and sentencing because it failed to construe the allegations of count one broadly. We disagree.

After the pleadings were closed, the respondent filed a motion to dismiss the third petition for a writ of habeas corpus to which the petitioner objected. When ruling on the motion to dismiss, Judge Kwak reviewed the record and found that evidence related to the petitioner's diminished capacity defense was presented at his third criminal and second habeas trials. In her oral decision, Judge Santos acknowledged that Felber's testimony regarding the petitioner's diminished capacity differed at the third criminal trial from his testimony at the second habeas trial, but ultimately denied the petitioner's claims.[11] In addition, Judge Kwak found that the other witnesses identified by the petitioner, i.e., Rosita Saucier, Gregory St. John, and Louis Avitabile, all previously testified on the petitioner's behalf. [12] Moreover, he found that the relief the petitioner was seeking in the second and third habeas proceedings was the same. The third habeas court concluded that the petitioner's claim alleging that evidence of his dimin-

ished capacity had been adjudicated previously and, therefore, was barred by the doctrines of res judicata and collateral estoppel. For those reasons, it dismissed the claim.

We begin with a review of the applicable law. "The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. . . . The doctrine . . . applies to criminal as well as civil proceedings and to state habeas corpus proceedings. . . . However, [u]nique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Specifically, in the habeas context, in the interest of ensuring that no one is deprived of liberty in violation of his or her constitutional rights . . . the application of the doctrine of res judicata . . . [is limited] to claims that actually have been raised and litigated in an earlier proceeding." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 63–64, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011).

"Thus, a habeas petition may be vulnerable to dismissal by reason of claim preclusion only if it is premised on the same ground litigated in a previously dismissed habeas petition. We recognize, therefore, that the application of the doctrine of claim preclusion to a habeas petition is narrower than in a general civil context because of the nature of the Great Writ.

"A narrowing of the application of the doctrine of res judicata to habeas proceedings is encapsulated in Practice Book § 23-29, which states: The judicial authority, may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or proffer new evidence not reasonably available at the time of the prior petition . . . ." (Internal quotation marks omitted.) *Kearney* v. *Commissioner of Correction*, 113 Conn. App. 223, 233–34, 965 A.2d 608 (2009).

On appeal, the petitioner claims that the habeas court improperly dismissed his claim that evidence of his diminished capacity defense was not properly presented to the triers of fact because the habeas court "failed to recognize that a broad [construction] of the pleading reveals that the petitioner alleged ineffective assistance of prior habeas counsel." The petitioner also noted that in his reply to the respondent's return, he alleged that "the evidence of diminished capacity in the petitioner's case has never been litigated or reviewed in its entirety." In other words, the petitioner is claiming that his third petition for a writ of habeas corpus alleges the ineffective assistance of both his third criminal trial

counsel and his second habeas counsel. We are not persuaded.

The petitioner's claim requires us to examine the relevant allegations of count one of his third petition. The construction of pleadings presents a question of law over which our review is plenary. See, e.g., *Miller* v. *Egan*, 265 Conn. 301, 308, 828 A.2d 549 (2003).

Count one begins with the allegation that the "petitioner's conviction is illegal because [t]here is a significant amount of evidence of diminished capacity in the petitioner's case, that could of changed the outcome of this case, if presented properly to the triers of fact. . . . The petitioner's habeas corpus was granted in 2002–2003 because of the testimony of a psychiatrist named Dr. Felber, but the triers of fact never got to hear that testimony."[13] Even the most generous reading of the allegations in paragraphs 1 and 2 of count one cannot be construed to allege a claim of ineffective assistance by the petitioner's second habeas counsel. First, the petitioner states that his conviction is illegal because significant evidence of his diminished capacity could have changed the outcome of his case if it had been presented to the triers of fact.[14]

In addition, the petitioner alleged that three individuals also testified as to his diminished capacity, which testimony was not heard by the triers of fact. The three individuals testified at the petitioner's second habeas trial. *The triers of fact referred to in the third petition for a writ of habeas corpus, therefore, must refer to the three judge panel.* On the basis of our construction of count one, there is no allegation that reasonably can be construed as a reference, either directly or indirectly, to the petitioner's second habeas counsel.

As to any claim that his third trial counsel was ineffective, Judge Santos found, following the second habeas trial, in which the petitioner had alleged the ineffective assistance of his third trial counsel, that the evidence regarding trial counsel's performance did not support a finding of ineffective assistance. See footnote 11 of this opinion. The petitioner's claim that trial counsel was ineffective was litigated at the second habeas trial and, therefore, the claim is barred by the doctrine of res judicata. Thus, we conclude that Judge Kwak properly dismissed the petitioner's claim that evidence of his diminished capacity special defense was not properly presented to the triers of fact.

B

The petitioner also claims that the third habeas court improperly dismissed that portion of count one of his third petition alleging that there were mitigating circumstances that should have been considered at sentencing. We do not agree.

In his memorandum of decision, Judge Kwak found that the petitioner had alleged that his conviction was

illegal because the sentencing court did not consider that the petitioner was nineteen years old when the murder occurred, he had no history of violence prior to or subsequent to the murder, the weapon used was discharged only once, there were more than 100 people in the area when the murder occurred, and there was no evidence that the petitioner and the victim knew one another. In his return, the respondent alleged that the claim should be dismissed because it failed to state a claim for which habeas corpus relief can be granted and on the ground of procedural default. In his reply to the respondent's return, the petitioner alleged that he was a teenager in 1994 and that his age is relevant because newly discovered brain research demonstrates that the brain's frontal lobe is not fully developed until the age of twenty-five.

The habeas court construed the allegations as a claim that the petitioner was entitled to an individualized sentencing hearing pursuant to *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and *State* v. *Riley*, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied, U.S. , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016) (*Miller/Riley*). The habeas court concluded, however, on the basis of *Haughey* v. *Commissioner of Correction*, 173 Conn. App. 559, 164 A.3d 849, cert. denied, 327 Conn. 906, 170 A.3d 1 (2017), that *Miller/Riley* considerations do not apply to the petitioner, who was older than eighteen at the time of the crime.[15] In *Haughey*, this court concluded that "[e]xpanding the application of [*Miller/Riley*] to offenders eighteen years of age or older simply does not comport with existing eighth amendment jurisprudence pertaining to juvenile sentencing." Id., 568. The habeas court, therefore, concluded that the petitioner, who was nineteen at the time of the crime, was not a child entitled to individualized sentencing pursuant to General Statutes §§ 46b-120 (1) and 54-91g (a) (1), and dismissed the claim as one that failed to state a claim for which habeas relief could be granted.

The habeas court also concluded that the petitioner's claim was barred by the doctrine of procedural default. After examining the petitioner's reply to the respondent's return, the court found that the reply failed to allege any facts or to assert any cause and resulting prejudice to permit review of the petitioner's mitigating circumstances claim. The court stated that the petitioner's reply merely reasserted facts alleged in his petition, which is not permissible or sufficient to overcome the respondent's affirmative defense of procedural default. The court concluded that the petitioner failed to allege a legally cognizable cause and prejudice to rebut procedural default and, therefore, dismissed the claim alleging mitigating circumstances.

On appeal, the petitioner claims that the habeas court

misconstrued the allegations of his mitigating circumstances claim. He denies that he was seeking to expand the age at which individualized sentencing is required and contends that he made that clear in his objection to the respondent's motion to dismiss.[16] He claims that the habeas court misconstrued the allegations as an attempt to raise the age for individualized sentencing and contends that a more "natural" interpretation of the allegations is that his sentence was disproportionate under the eighth and fourteenth amendments to the United States constitution, citing *State* v. *Santiago*, 318 Conn. 1, 122 A.3d 1 (2015). The petitioner argues that the habeas court should have construed his petition as a claim that his fifty year sentence was grossly disproportionate in light of evolving standards of decency and that it no longer served any legitimate penological purpose. He contends that the allegations were sufficient to state a claim that his right to be free from cruel and unusual punishment under the eighth and fourteenth amendments was violated because his sentence is disproportionate.

We disagree that the allegations of the first count of the petition alleged a constitutional challenge to his sentence in that it constituted cruel and unusual punishment because it was disproportionate. The petitioner alleged that he "was a teenager (nineteen) when this incident occurred." In his reply to the respondent's return, the petitioner alleged factors and evidence of his diminished capacity. He did not allege that the sentence was disproportionate nor did he allege cruel and unusual punishment or mention the eighth amendment.

In the past fifteen years, the United States Supreme Court has issued three cases addressing the sentencing of *juvenile* offenders to assure that their sentences are not excessive or disproportionate. "The court first barred capital punishment for all juvenile offenders; *Roper* v. *Simmons*, 543 U.S. 551, 575, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); and then barred life imprisonment without the possibility of parole for juvenile nonhomicide offenders. *Graham* v. *Florida*, 560 U.S. 48, 79–80, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Most recently, in *Miller* v. *Alabama*, [supra, 567 U.S. 467], the court held that mandatory sentencing schemes that impose a term of life imprisonment without parole on juvenile homicide offenders, thus precluding consideration of the offender's youth as mitigating against such a severe punishment, violate the principle of proportionate punishment under the eighth amendment." *State* v. *Riley*, supra, 315 Conn. 640.

In *Riley*, the defendant was seventeen at the time he committed the crimes of which he was convicted. Id., 641. Our Supreme Court agreed with the defendant's claim on direct appeal that, pursuant to *Miller* v. *Alabama*, supra, 567 U.S. 460, he was "entitled to a new sentencing proceeding at which the court must consider

as mitigation the defendant's age at the time he committed the offenses and the hallmarks of adolescence that *Miller* deemed constitutionally significant when a juvenile offender is subject to a potential life sentence."[17] *State* v. *Riley*, supra, 315 Conn. 641. Our Supreme Court made clear, however, that it used the "term juvenile offenders to refer to persons who committed a crime when they were *younger than eighteen years of age*." (Emphasis added.) Id., 640 n.1.

Subsequent opinions of this court have stated that *Miller*'s holding is limited to cases in which the defendant is younger than eighteen at the time of the crime. "Our law . . . categorically limits review pursuant to *Miller* and its progeny to cases in which the defendant was under the age of eighteen at the time of the crime. In *State* v. *Delgado*, 323 Conn. 801, 810–11, 151 A.3d 234 (2016), our Supreme Court held that the Superior Court had no jurisdiction to entertain a motion to correct that did not state a colorable claim for relief."[18] *State* v. *Mukhtaar*, 179 Conn. App. 1, 9, 177 A.3d 1185 (2017). "[A]n offender who has reached the age of eighteen is not considered a juvenile for sentencing procedures and eighth amendment protections articulated in *Miller*." *Haughey* v. *Commissioner of Correction*, supra, 173 Conn. App. 571.

The petitioner alleged that he was nineteen years old at the time of the crime. We conclude, therefore, that the habeas court properly dismissed the petitioner's claim that he was denied an individualized sentencing hearing on the ground that it failed to state a claim for which habeas relief can be granted under *Miller/Riley*.

Even if the habeas court misconstrued the allegations of the petition as an effort to expand the application of *Miller/Riley*, the petitioner cannot prevail on his claim that his sentence is disproportionate to the crime and therefore a violation of the eighth amendment. Numerous decisions of the United States Supreme Court and the appellate courts of this state hold to the contrary. "The eighth amendment to the federal constitution establishes the minimum standards for what constitutes impermissibly cruel and unusual punishment. . . . Specifically, the United States Supreme Court has indicated that at least three types of punishment may be deemed unconstitutionally cruel: (1) inherently barbaric punishments; (2) excessive and disproportionate punishments; and (3) arbitrary or discriminatory punishments." (Citation omitted; footnote omitted.) *State* v. *Santiago*, supra, 318 Conn. 18–19. In *State* v. *Ross*, 230 Conn. 183, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995), our Supreme Court "broadly adopted, as a matter of state constitutional law, this federal framework for evaluating challenges to allegedly cruel and unusual punishments." *State* v. *Santiago*, supra, 19. "[T]he eighth amendment mandates that punishment

be proportioned and graduated to the offense of conviction." Id., 20.

As to the petitioner's eighth amendment claim, the respondent correctly points out that a claim that a fifty year sentence of imprisonment for murder is excessive and disproportionate fails as a matter of law. The eighth amendment "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." (Internal quotation marks omitted.) *Ewing* v. *California*, 538 U.S. 11, 23, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003). The petitioner's fifty year sentence is ten years less than the maximum life term that our legislature has prescribed for murder. "The potential maximum sentence for murder in violation of . . . § 53a-54a is life imprisonment. General Statutes § 53a-35a (2). A life sentence is a definite sentence of sixty years. General Statutes § 53a-35b." *Braham* v. *Commissioner of Correction*, 72 Conn. App. 1, 9 n.6, 804 A.2d 951, cert. denied, 262 Conn. 906, 810 A.2d 271 (2002). "[I]t is rare that a sentence falling within a legislatively prescribed term of years will be deemed grossly disproportionate." *United States* v. *Reingold*, 731 F.3d 204, 212 (2d Cir. 2013); see also *Ewing* v. *California*, supra, 22 ("federal courts should be reluctant to review legislatively-mandated terms of imprisonment" (internal quotation marks omitted)). For these reasons, the habeas court properly dismissed the plaintiff's mitigating circumstances claim for failing to state a claim for which relief can be granted.

2

The petitioner also claims that the habeas court improperly dismissed his mitigating circumstances claim as procedurally defaulted for two reasons: (1) it is questionable whether procedural default can be applied meaningfully to evolving standards of decency, and (2) his claim is predicated upon newly discovered evidence regarding brain development. We disagree.

"Practice Book § 23-29 (5) permits a habeas court to dismiss a petition for any . . . sufficient ground . . . which may include procedural default. . . . The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *Saunders* v. *Commissioner of Correction*, 194 Conn. App. 473, 481–82, 221 A.3d 810 (2019), cert. granted on other grounds, 334 Conn. 917, 222 A.3d 103 (2020).

The law regarding procedural default is clear. "Under the procedural default doctrine, a claimant may not raise, in a collateral proceeding, claims that he [or she]

could have made at trial or on direct appeal in the original proceeding, unless he [or she] can prove that his [or her] default by failure to do so should be excused. . . . When a respondent seeks to raise an affirmative defense of procedural default, the rules of practice require that he or she must file a return to the habeas petition alleg[ing] any facts in support of any claim of procedural default . . . or any other claim that the petitioner is not entitled to relief. . . . If the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition, the petitioner shall file a reply. . . . The reply shall allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. . . .

"The cause and prejudice standard [of reviewability] is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, [inadvertence] or ignorance . . . . In order to satisfy this standard, the [habeas] petitioner must demonstrate *both* good cause for failing to raise a claim at trial or on direct appeal *and* actual prejudice from the underlying impropriety. . . . [T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . .

"With respect to the actual prejudice prong, [t]he habeas petitioner must show not merely that the errors at . . . trial created the *possibility* of prejudice, but that they worked to the *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. . . . Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied fundamental fairness at trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Arroyo* v. *Commissioner of Correction*, 172 Conn. App. 442, 461–62, 160 A.3d 425, cert. denied, 326 Conn. 921, 169 A.3d 235 (2017).

Our review of the record discloses that the petitioner failed to raise the claim of mitigating circumstances at sentencing, on direct appeal, or at his second habeas hearing. But see footnote 15 of this opinion. The respondent alleged in its return that the petitioner's mitigating circumstances claim was procedurally defaulted; the third habeas court agreed, stating that the petitioner's reply failed to allege any facts or assert any cause and resulting prejudice to permit review of his claim. On appeal, the respondent argues that we should affirm the judgment of dismissal because the petitioner's appellate argument that his sentence is disproportionate is unsupported by legal authority that procedural default does not apply to eighth amendment claims predicated on

evolving standards of decency. The respondent cites several federal cases in support of his argument, e.g., *Dugger* v. *Adams*, 489 U.S. 401, 405–407, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989) (claim not so novel that failure to raise it in state court proceedings procedurally defaulted in federal habeas proceeding); *Franklin* v. *Bradshaw*, 695 F.3d 439, 454–55 (6th Cir. 2012) (procedural default applies to evolving standards argument where petitioner failed to raise equal protection claim in state court, seeking better outcome in federal habeas petition), cert. denied sub nom. *Franklin* v. *Robinson*, 569 U.S. 906, 133 S. Ct. 1724, 185 L. Ed. 2d 789 (2013); *Prieto* v. *Zook*, 791 F.3d 465, 467–69 (4th Cir.) (eighth amendment claim regarding prohibition on execution of intellectually disabled person procedurally barred when not raised at sentence review), cert. denied,      U.S.     , 136 S. Ct. 28, 192 L. Ed. 2d 999 (2015).

The respondent also argues that the petitioner failed to allege any facts regarding cause and prejudice. Although the petitioner alleged that newly discovered brain research shows that the brain's frontal lobe is not fully developed until the age of twenty-five, he did not allege that the research was not reasonably available to him at the time of the trial before the three judge panel in 2006, his direct appeal in 2010, or his second habeas trial in 2011. The respondent points out, however, that, in 2005, when the Supreme Court decided *Roper*, scientific evidence confirmed that "regions of the adolescent brain," in particular "those associated with impulse control, regulation of emotions, risk assessment, and moral reasoning" are not fully mature until after the age of eighteen. See *Roper* v. *Simmons*, U.S. Supreme Court Briefs, October Term, 2004, Amicus Brief of the American Medical Association et al. p.2, reprinted in 2004 WL 1633599 *2.[19] The Supreme Court recognized that "qualities that distinguish juveniles from adults do not disappear when an individual turns eighteen." *Roper* v. *Simmons*, supra, 543 U.S. 574. In *Graham* v. *Florida*, supra, 560 U.S. 68, decided in 2010, the Supreme Court explicitly relied on amici briefs explaining the results of brain development research conducted in the late 1990s through 2009. The petitioner, therefore, can hardly prevail on his argument that societal standards are evolving when the mitigating circumstances for which he argues were known and accepted at the time of his third trial and his second habeas petition.

The respondent further argues that the petitioner failed to plead prejudice adequately in his reply. We agree. To allege a legally sufficient prejudice in the context of the present case, the petitioner was required to allege specific facts demonstrating that, if he had offered brain development studies, there was a substantial likelihood or a reasonable probability sufficient to undermine the confidence in the outcome that the three judge panel would have imposed a lighter sentence.

We, therefore, conclude that the habeas court properly dismissed the petitioner's mitigating circumstances claim pursuant to procedural default.

For the foregoing reasons, the habeas court properly dismissed count one of the third petition for a writ of habeas corpus.

V

The petitioner's third claim is that the habeas court improperly dismissed count two of his third petition on the ground of procedural default. In count two, the petitioner alleged that he was denied the constitutional right to equal protection because the prosecutor vindictively tried him for murder a third time after his first petition for a writ of habeas corpus was granted. We do not agree.

The petitioner alleged in count two of his third petition that a federal investigation revealed that Connelly, former Waterbury state's attorney, allegedly was providing Minella's clients with favorable treatment in exchange for trips provided to him by Minnella. The petitioner further alleged that he was subject to a third criminal trial because Connelly vindictively prosecuted him for a third time. He alleged that he could not afford to retain Minnella but, if Minnella had been his counsel, Connelly would not have subjected him to a third criminal trial and the petitioner would not be in "this situation" because Minnella would have disposed of the petitioner's case.[20] He also alleged that without Connelly's misconduct, he would have been tried on a lesser charge, released on time served, or offered a favorable plea deal.

In his return, the respondent alleged that count two was barred by procedural default and failed to state a claim upon which habeas relief may be granted.[21] In his reply, the petitioner realleged the substance of the allegations in count two of the petition and attached copies of a November 30, 2005 newspaper article regarding Connelly's decision to retry him for murder. In the article, the petitioner's counsel is quoted as stating that the petitioner is not willing to plead to a charge higher than manslaughter.

A

In its memorandum of decision with regard to the petitioner's equal protection claim, the habeas court stated that the petitioner had not raised the claim in the trial court or on appeal. The court found that the petitioner's reply "merely recites the facts alleged in his petition, with the addition of a copy of a newspaper article in which . . . Connelly indicates that he is unwilling to let the petitioner plead guilty to manslaughter. The petitioner has failed to allege legally cognizable cause and prejudice to rebut his procedural default."

As we previously stated in part III B of this opinion,

when a habeas court dismisses a claim on the ground of procedural default, we review the court's conclusions to determine whether, as a matter of law, they are legally and logically correct. To overcome procedural default, the petitioner must demonstrate both good cause for failing to raise the claim in a prior proceeding and prejudice. The existence of good cause turns on whether there was some objective factor external to the defense that impeded counsel's efforts to comply with the procedural rule. See *Arroyo* v. *Commissioner of Correction*, supra, 172 Conn. App. 461–62. We agree with the habeas court that the petitioner failed to meet his burden.

In his reply, the petitioner failed to state facts as to why he did not raise the claim of vindictive prosecution prior to alleging it in his third petition for a writ of habeas corpus. In his opposition to the respondent's motion to dismiss, however, he asserted that he could not have raised the claim because the federal investigation into Connelly's alleged corruption did not occur until years after the 2006 trial before the three judge panel. Even if that assertion could be read into the petitioner's reply, it does not assert objective facts that prevented him from raising the equal protection claim in his second petition for a writ of habeas corpus. In his petition, the petitioner alleged that Connelly resigned in January, 2011. The petitioner's second habeas trial did not commence until June, 2011. The petitioner, therefore, failed to meet his burden to establish good cause for failing to raise the claim in a prior proceeding.

B

Although the habeas court did not dismiss the second count of the third petition on the ground of failing to state a claim on which habeas relief can be granted, on appeal, the respondent raises failure to state a claim as an alternative ground on which to affirm the judgment of dismissal[22] should we conclude that the court improperly dismissed the petitioner's third petition for a writ of habeas corpus.[23] Although we conclude that the court properly dismissed the second count of the petition on the ground of procedural default,[24] we agree with the respondent that the judgment also can be affirmed on the ground of failure to state a viable claim for habeas relief.[25]

The petitioner alleged that "Connelly ordered his assistant to selectively and vindictively prosecute the petitioner for the third time on the same case that happened back in 1994." "A presumption of vindictiveness generally does not arise in a pretrial setting. . . . Therefore, the defendant must show actual vindictiveness on the part of the prosecutor." (Citation omitted; internal quotation marks omitted.) *State* v. *Lee*, 86 Conn. App. 323, 327–28, 860 A.2d 1268 (2004), cert. denied, 272 Conn. 921, 867 A.2d 839 (2005). To establish an actual vindictive motive on Connelly's part, the peti-

tioner had to "prove objectively that the prosecutor's charging decision was a direct and unjustifiable penalty . . . that resulted solely from the defendant's exercise of a protected legal right . . . . Put another way, the defendant must show that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a stalking horse, and (2) [the defendant] would not have been prosecuted except for the animus." (Internal quotation marks omitted.) Id., 328.

The petitioner failed to allege any facts to meet his substantial burden to demonstrate Connelly's animus toward him. It is undisputed that the petitioner was tried twice on the charge of murder. Thus, Connelly's decision to try the petitioner for a third time could not have been a direct and unjustifiable penalty for the petitioner's having exercised a protected legal right; see id., 328; as it flowed from Judge Rittenband's order granting, in part, the first petition for a writ of habeas corpus. Judge Rittenband ordered that the petitioner be unconditionally discharged if the state's attorney for the judicial district of Waterbury did not file a notice of intention to retry the petitioner. See footnote 4 of this opinion. Moreover, in his first petition for a writ of habeas corpus, the petitioner, who had been tried for murder, sought a new trial. When Judge Rittenband granted the petition and ordered that the petitioner be retried, the petitioner got the remedy he sought. The petitioner, therefore, failed to demonstrate good cause for failing to raise his claim in an earlier proceeding.

In order to overcome procedural default, a petitioner must demonstrate *both* good cause and actual prejudice for failing to raise the claim in a prior proceeding. See *Arroyo* v. *Commissioner of Correction,* supra, 172 Conn. App. 462. Because the petitioner has failed to meet his burden to demonstrate good cause, we need not determine whether he demonstrated actual prejudice. For the foregoing reasons, we conclude that the habeas court properly dismissed count two of the third petition for a writ of habeas corpus.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner filed his third petition for a writ of habeas corpus as a self-represented party. He was represented by counsel on appeal.

[2] In the petitioner's first direct appeal, our Supreme Court stated that the jury "reasonably could have found the following facts. In the early morning hours of November 5, 1994, the [petitioner] and [Hall] began arguing in the vicinity of North Main and East Farm Streets in Waterbury. Domingo Alves, a close family friend of Hall, placed himself between Hall and the [petitioner]. Alves put his hands out, one toward Hall and one toward the [petitioner], in an effort to separate them. Hall stood calmly, but the [petitioner] kept pushing against Alves, trying to reach Hall. Alves then lightly put both his hands on the [petitioner's] chest to stop him from advancing. The [petitioner] removed a gun from his pocket. When Alves saw the gun, he took a step back from the [petitioner]. Hall stood still and appeared to be frightened. The [petitioner] shot Hall once in the torso, then ran to his car. While driving away, the [petitioner] told his cousin, James Bryan, who was waiting in the

car, 'I told him stop messing with me.' " (Footnote omitted.) *State* v. *Woods*, 250 Conn. 807, 809, 740 A.2d 371 (1999).

[3] In his first direct appeal, the petitioner claimed that the trial court improperly permitted the prosecutor to comment during closing argument on the petitioner's failure to call his prior counsel to testify, and that the court's jury instructions on "self-defense inadequately advised the jury that the [petitioner's] subjective belief that he was in imminent danger, even if mistaken, could justify his conduct." *State* v. *Woods*, supra, 250 Conn. 808–809.

[4] Judge Rittenband ordered the petitioner "conditionally released from confinement. He shall be absolutely discharged unless within thirty days from the date of this memorandum of decision, the state's attorney for the judicial district of Waterbury files with the clerk's office a written notice of intention to proceed with the retrial of the petitioner." *Woods* v. *Warden*, Superior Court, judicial district of Hartford, Docket No. CV-00-0598785 (April 3, 2003).

[5] At trial before the three judge panel, the petitioner argued that, "because of his diminished mental capacity, he believed that he was acting in self-defense." *State* v. *Woods*, Superior Court, judicial district of Waterbury, Docket No. CR-94-235234 (June 30, 2006). The court found, however, that the petitioner did not "[produce] any credible evidence that would support a claim of self-defense." Id. The record discloses that John H. Felber, a psychiatrist, and attorneys Gregory St. John and Louis Avitabile testified to the petitioner's diminished capacity.

[6] In his second direct appeal, the petitioner claimed that the trial court abused its discretion by admitting his testimony from a prior trial because that testimony was not voluntary and that his waiver of his right to a jury trial was not valid. *State* v. *Woods*, supra, 297 Conn. 571. Our Supreme Court rejected his claims and affirmed his conviction. Id., 589.

[7] The petitioner alleged in his second petition for a writ of habeas corpus that his third criminal trial counsel rendered ineffective assistance by (1) failing to adequately prepare him to testify at the third criminal trial, (2) advising him to waive a trial by jury and to be tried by a three judge panel, (3) failing to object to testimony regarding a firearm that was unrelated to the subject crime, (4) failing to impeach state's witnesses who were seen speaking with one another during the trial, (5) failing to adequately prepare his expert witness, John H. Felber, a psychiatrist, to testify, and (6) failing to follow through on a plea bargain. The second habeas court, *T. Santos*, *J.*, found that the petitioner failed to meet his burden of proof on any of the claims. See *Woods* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-08-4002720 (June 30, 2011).

[8] The record discloses that the petitioner was represented by the same attorney at his first and second habeas trials.

[9] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . .

"(2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted;

"(3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . ."

[10] At the petitioner's request, counsel was appointed to represent the petitioner in the habeas court. Appointed counsel, however, filed a motion for leave to withdraw his appearance pursuant to Practice Book § 23-41 (a), which provides in relevant part: "[w]hen counsel has been appointed . . . and counsel, after conscientious investigation and examination of the case, concludes that the case is wholly frivolous, counsel shall so advise the judicial authority by filing a motion for leave to withdraw from the case. . . ." The judicial authority, *Bright*, *J.*, granted appointed counsel's motion to withdraw. The petitioner proceeded as a self-represented party until appellate counsel was appointed for him.

[11] In her opinion, Judge Santos stated in relevant part: "Now as to [the allegation that] trial counsel failed to timely notice and adequately prepare petitioner's expert witness . . . Felber, and this is what the petitioner's counsel has felt is the most important of these issues.

"I know that, and it's clear and you're right [habeas counsel], there is a difference in terms of what has transpired here in the testimony, and I think anybody reading that would see that there was a difference in how . . . Felber testified, but just as . . . and there was no evidence as to . . . although there were comments, but there was no evidence as to whether

or not . . . Felber had any decline in his mental capacity or whatever over the years from between 2002 and 2006, as . . . was argu[ed] . . . so that wasn't based on any evidence. . . .

"[The court agreed that trial counsel testified that he did not notice a decline in Felber's mental faculties, but perhaps there was a physical decline. The court stated] I don't think that as far as his ability to recollect or anything of that sort, it doesn't seem like there's any evidence that he could not testify, if he wished, to exactly what he had testified earlier. . . . The fact that he didn't do that that day none of us know why. . . . He couldn't tell us today . . . but [trial counsel] spoke with him on the telephone twice. The first time he told him what he was going to send him. He told him that . . . he was going to send him the . . . prior habeas testimony, and he was going to send him the transcript of the trial, and so he would know, he would have some ability to be able to go back and see what he had said before."

Trial counsel looked at Felber's "opinion as he would something that was an empirical test." Prior to the third criminal trial, trial counsel had the petitioner examined by Kenneth Selig, a psychiatrist. Trial counsel, however, did not like what he heard when he received Selig's report.

Trial counsel felt that Felber's "examination of whatever records he had, his initial conversations with [the petitioner], on the eve of trial was perhaps all he had and the best he had and he was going with it, and whatever problems he was going to encounter, he was going to have to deal with at the trial. And it wasn't until he had the results of . . . Selig's report that he made that decision, and, again, it was a strategic decision." See *Woods* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-08-4002720 (June 30, 2011).

[12] The petitioner made the following allegations regarding the witness' testimony. Saucier, a guidance counselor with Waterbury Adult Education, "testified that [the petitioner's] scores on a standardized test were abysmal. . . ." Gregory St. John, an attorney who represented the petitioner when he was a juvenile, "testified that [the petitioner] had been difficult to explain matters to . . . in a way that he could understand." St. John believed the petitioner was "sufficiently impaired to make it difficult for him to form the requisite specific intent for intentional murder." Avitabile, an experienced criminal defense lawyer, "testified that after speaking with [the petitioner, Avitabile] said that [the petitioner's] intellectual abilities [were] subpar and that he is of diminished capacity."

[13] Interestingly, the petitioner alleged in paragraph 5 of count one: "Evidence in this case shows that [the petitioner] was under the influence of a large amount of alcohol the night this incident occurred."

[14] The petitioner essentially is alleging that he would not have been convicted if evidence of his diminished capacity had been presented to the triers of fact. The triers of fact who convicted the petitioner and, ultimately, sentenced him, were the members of the three judge panel. If there is any claim of ineffective assistance of counsel, it logically relates to his third trial counsel. Moreover, in the next paragraph, the petitioner sets out Felber's testimony that was presented at his first habeas trial and alleges that it was not presented to the triers of fact. The words triers of fact, therefore, must refer to the three judge panel which convicted and sentenced him. Such allegations cannot refer to his second habeas counsel.

[15] The habeas court stated that General Statutes § 54-91g (a) (1), which requires a sentencing court to take into account "the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development," only applies to cases involving children, as defined by General Statutes § 46b-120. (Internal quotation marks omitted.) Section 46b-120 (1) defines child as "any person under eighteen years of age who has not been legally emancipated . . . ." We note that at the time of the petitioner's sentencing, General Statutes (Rev. to 1997) § 46b-120 (1) defined child as "any person under sixteen years of age . . . ."

[16] The record does not support the petitioner's representation. In his brief on appeal, the petitioner represented that in his objection to the respondent's motion to dismiss, he explicitly disclaimed that he intended to plead that *Miller* v. *Alabama*, supra, 567 U.S. 460, and *State* v. *Riley*, supra, 315 Conn. 637, should be extended to nonjuveniles. Our review of the petitioner's objection to the motion to dismiss makes no mention of *Miller* and *Riley*, let alone an argument that the petitioner did not seek to expand the age of individuals for whom individualized sentencing applies.

[17] "By statute and the rule of practice, our trial courts must consider the

information in the presentence report before imposing sentence. See General Statutes § 54-91a (a); Practice Book §§ 43-3 and 43-10." *State* v. *Riley*, supra, 315 Conn. 659.

In the present case, the three judge panel ordered a presentence investigation of the petitioner. The petitioner referred to it in his reply to the respondent's return and attached a copy of the mental health evaluation performed by Catholic Charities as part of the presentence investigation. The evaluation states that, on "August 11, 2006, the [petitioner] was evaluated by the director of the clinical staff at Catholic Charities. The clinical impressions of the evaluation were that the [petitioner] has a long history of learning disability, alcoholism, some sleep disturbance, and depression. It was determined that the [petitioner] would benefit from therapy for mental health and substance abuse issues, including medication management. It was also noted that extensive educational and psychological testing would be useful in determining the full extent of [the petitioner's] learning and cognitive impairments and would have implications for possible treatment modalities. During the evaluation the [petitioner] expressed some paranoia particularly that he believes that some people act suspiciously around him and may be out to get him, however, it was unclear how much reality there is to that perception. The [petitioner] was diagnosed with [d]epression, [not otherwise specified] and [l]earning [d]isability [not otherwise specified]." (Internal quotation marks omitted.) The petitioner does not claim that the three judge panel failed to consider the Catholic Charities mental health evaluation prior to sentencing.

[18] Melvin Delgado was convicted of a murder he committed when he was sixteen years old and sentenced to sixty-five years imprisonment without the possibility of parole. *State* v. *Delgado*, supra, 323 Conn. 802. At the time of his sentence, the court did not consider "mitigating factors associated with the juvenile's young age at the time of the crime." Id. Following the passage of No. 15-84 of the 2015 Public Acts (P.A. 15-84), Delgado filed a motion "to correct his allegedly illegal sentence, claiming that he [was] entitled to be resentenced." Id., 803—804. Our Supreme Court affirmed the judgment dismissing of the motion to correct. Id., 816. Delgado failed to allege a colorable claim; he conceded that the enactment of P.A. 15-84, which ensures that he is eligible for parole, resolved his eighth amendment claim. Id., 809.

[19] The brief was submitted by the American Medical Association, American Psychiatric Association, American Society for Adolescent Psychiatry, American Academy of Child & Adolescent Psychiatry, American Academy of Psychiatry and the Law, National Association of Social Workers, Missouri Chapter of the National Association of Social Workers, and National Mental Health Association.

[20] Shorn of its legalese, this part of the petitioner's singular claim appears to decry his inability to benefit from an *allegedly* corrupt practice.

[21] The respondent alleged that the petitioner failed to state a cognizable equal protection claim under either the state or federal constitutions which demonstrates that his conviction was the product of purposeful discrimination, citing *Abdullah* v. *Commissioner of Correction*, 123 Conn. App. 197, 1 A.3d 1102, cert. denied, 298 Conn. 930, 5 A.3d 488 (2010). The respondent also alleged that the petitioner failed to state a claim upon which the habeas court could grant relief because the relief the petitioner sought would have resulted from his own illegal acts, citing *Greenwald* v. *Van Handel*, 311 Conn. 370, 88 A.3d 467 (2014).

[22] The petitioner responded to the respondent's alternative ground for affirmance by arguing that the respondent failed to raise the affirmative defense in his return. The record is to the contrary. The respondent pleaded procedural default and two grounds for failure to state a claim in his return.

[23] An appellate court may affirm the judgment of the trial court although it may be founded on an improper reason. See *Mercer* v. *Rodriquez*, 83 Conn. App. 251, 268, 849 A.2d 886 (2004).

[24] We address the respondent's alternative ground to affirm the judgment of dismissal to resolve all claims should the petitioner seek certification to appeal to our Supreme Court.

[25] Our Supreme Court has acknowledged that "circumstances exist where although the trial court did not reach a dispositive issue"; *Bouchard* v. *Deep River*, 155 Conn. App. 490, 496, 110 A.3d 484 (2015); an appellate court may nonetheless "affirm the judgment of the trial court [on an alternative ground] so long as the plaintiff is not prejudiced or unfairly surprised by the consideration of the issue." Id. An appellate court may affirm on an alternative ground if it concerns a question of law, the essential facts are undisputed,

and the court's standard of review is plenary. See id. In the present case, the respondent raised the alternative ground in its brief and the petitioner responded to it in his reply brief. Moreover, the respondent pleaded failure to state a claim in his return to the allegations of count two of the petition.

—————————————————————